## BREAZ v. STATE OF INDIANA.

[No. 26,947. Filed April 5, 1938. Rehearing denied April 27, 1938.]

32

*Joseph H. Conroy* and *Allen P. Twyman,* for appellant.

*Omer S. Jackson,* Attorney-General, and *Ed A. Bosse,* Deputy Attorney-General, for the State.

SHAKE, J.—Appellant and three others were charged by affidavit with the crime of robbery. The codefendants entered pleas of guilty but the appellant was tried by the court.

The affidavit charged the defendants, including the appellant, with the robbery of Dimitar Silaghi on or about April 26, 1937. Although he was named as a principal, it was the theory of the prosecution that the

appellant was an accessory before the fact under §9-102 Burns' Ann. St. 1933 (§2243 Baldwin's 1934), which provides: "Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command or otherwise procure a felony to be committed may be charged by indictment or affidavit, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted; and, upon such conviction, he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

The appellant was found guilty as charged. He filed a motion for a new trial, assigning that the finding was not sustained by sufficient evidence and that it was contrary to law. A new trial was denied and this constitutes the only error assigned. Appellant contends that there is a total lack of evidence that he directed or had any knowledge of the particular crime charged, and that the undisputed evidence shows that any conspiracy existing between him and his associates was terminated before the commission of the alleged crime.

To sustain the charge the state offered the testimony of the appellant's codefendants and others. This was to the effect that for some considerable time prior to the date of the specific robbery charged the appellant had been the directing head of an active conspiracy to commit robberies in the community, and that in furtherance of the common purpose, he had supplied his associates with a sawed-off shotgun, ammunition, money for expenses, the use of automobiles, and had pointed out to them six or seven different places or persons who could be profitably robbed. It was further shown that he had claimed and collected a share of the profits from prior robberies committed by one or more of his associates.

Appellant's theory with respect to the crime of which he was convicted is clearly disclosed by the following verbatim quotations taken from his brief: "The evidence in the record shows in many instances where the appellant, Steve Breaz, pointed out to his alleged co-conspirators places to be robbed, and discussed and planned with them about these places, but these places were not actually robbed, and the actual crimes were not even attempted, but in every instance were wholly abandoned. . . . Conceded that there might have been proposals and counter-proposals made by the appellant with his alleged accomplices to hold up certain other people, the evidence in the record does not show a deliberate and clear case of conspiracy to rob the particular victim named in the affidavit, and at the specific time mentioned." In support of his theory the appellant relies upon *Johnson* v. *State* (1935), 208 Ind. 89, 194 N. E. 619, but we find nothing in that case that can inure to the relief of the appellant. Johnson was convicted of conspiring with two others to rob two employees of the Indiana Auto License Department. This court found, from an examination of the evidence, that there was no evidence of the existence of a conspiracy to commit the crime charged. The opinion expresses no rule of law either directly or indirectly applicable to this case.

It is true that to connect one with a crime as an accessory before the fact it is necessary that there be an immediate causal connection between the instigation and the act, but this does not require that the act consummated shall be, in all its details, the precise one previously contemplated by the parties. It is sufficient if the previous understanding is substantially carried out.

"There can be no doubt of the general rule of law, that a person engaged in the commission of an unlawful act

is legally responsible for all the consequences which may naturally or necessarily flow from it, and that, if he combines and confederates with others to accomplish an illegal purpose, he is liable *criminaliter* for everything done by his confederates which follows incidentally in the execution of the common design, as one of its probable and natural consequences, even though it was not intended as a part of the original design or common plan. . . . This rule of criminal responsibility for the acts of others is subject to the reasonable limitation that the particular act of one of a party, for which his associates and confederates are to be held liable, must be shown to have been done for the furtherance or in prosecution of the common object and design for which they combined together." 1 R. C. L. §5, p. 133.

The fallacy of appellant's contention is disclosed by the very nature of the conspiracy to which he was a party. It is clear that the object of this unlawful combination was directed against no particular person or place. It was a general conspiracy to commit robberies whenever and wherever this could be profitably and safely done. According to appellant's testimony, he had no part in any of the robberies committed by his associates, but there is ample evidence to show that he accepted a share of the proceeds of these crimes. The court was warranted in concluding that the appellant's suggestions of likely victims were made in aid of a general conspiracy rather than to restrict or limit the activities of his confederates. The evidence was ample to sustain the conclusion that the robbery of Silaghi was within the purview of what was contemplated when the conspiracy was conceived. The appellant is in no position to say now that the crime charged was disconnected from the evil scheme.

We quote again from the appellant's brief: "The wit-

ness for the state, Pete Steina, on direct examination stated that 'At 4 o'clock on that day (April 26, 1937) Steve Breaz got mad at us, and said he had lost confidence in us.' This shows conclusively that the appellant, Steve Breaz, was not involved in any conspiracy to rob Silaghi on that date, as charged in the affidavit." We do not so construe this testimony. The statement and conduct accredited to the appellant did not necessarily establish the end of his part in the conspiracy. It would be equally consistent to say that this manifestation of anger and expression of lack of confidence was intended to spur the co-conspirators on to the commission of other crimes in furtherance of the common purpose.

Judgment affirmed.