HECTOR ORTIZ AND BRUCE TYRONE WILLIAMS *v.*
STATE OF INDIANA.

[No. 576S147. Filed November 16, 1976.]

*Terrence L. Smith,* of East Chicago, for appellants.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

DeBRULER, J.—Appellants, Hector Ortiz and Bruce Tyrone Williams, were convicted of first degree murder, Ind. Code § 35-13-4-1(a) (Burns 1975), and sentenced to life imprisonment. On appeal, we consider the following contentions of appellants:

(1) that a statement by Williams should have been suppressed;

(2) that Ortiz was entitled to have his trial severed from Williams' trial;

(3) that the trial court erred in re-reading Williams' statement to the jury during deliberation;

(4) that a remark made by the prosecutor in closing argument was improper and entitled appellants to a mistrial;

(5) that the trial court erred in instructing the jury that they must deliberate until reaching a verdict;

(6) that the verdicts are not supported by sufficient evidence.

On August 6, 1975, the body of Gregory Hill was found in an alley in the neighborhood of Buffington Park in Gary, with a massive wound to the back of the head. An autopsy revealed that his death resulted from being shot in the back of the head with a shotgun. Appellants were charged by indictment with first degree murder, and were tried by jury in the Criminal Division of the Lake Superior Court.

## I.

Appellants first contend that a statement given by Williams should have been suppressed.

Williams surrendered himself to the Gary Police at approximately 4:00 or 5:00 p.m., on August 26th (the early estimate is Williams', the later the detective's). Detective Shannon testified that he orally advised Williams of his *Miranda* rights from a printed form, which he also allowed Williams to read. Shannon testified that he "explained" each right in turn. The adequacy of the substance of the warnings is not in question.

Williams submitted to a polygraph examination, signed a rights waiver, and, at 10:07 p.m., August 26th, gave Detective Shannon a statement.

An in-trial suppression hearing was conducted outside the presence of the jury. Williams testified that he was twenty years old and had completed the junior year of high school; he "didn't read too well." Although he had signed a waiver form he testified that he had been unaware of its significance. He testified that he had given statements before and always signed the rights waiver without understanding it. At one point he said that Detective Shannon told him that the police would "see what they could do" for him. Later he testified that Shannon had said that if Williams made a statement Shannon "could probably talk to the prosecutor and make a deal."

Williams also said that the polygraph operator had earlier told him that he had given untruthful answers to his questions. He said that his reasons for giving the statement were that "people out on the street," apparently friends of the decedent Gregory Hill were threatening him, and that he thought if he gave the statement he would not be "involved."

Appellants argue that the statement was not voluntary, and that the State failed to show a knowing and intelligent waiver of Williams' right to counsel and to remain silent.

A statement by an accused is not admissible against him if it is not voluntarily given. *Malloy* v. *Hogan*, (1964) 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653; Ind. Code § 35-5-5-1 (Burns 1975). A statement made under circumstances requiring the giving of *Miranda* warnings is not admissible unless such warnings are given and a knowing and intelligent waiver of the rights involved is made. *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Pirtle* v. *State*, (1975) 263 Ind. 16, 323 N.E. 2d 634.

In determining whether a statement was voluntarily given, we look to all the circumstances surrounding its giving to determine whether it was "induced by any violence, threats, promises, or other improper influence." *Montes* v. *State*, (1975) 263 Ind. 390, 332 N.E.2d 786, 792. The same test determines whether a waiver of the *Miranda* rights has occurred. *Nacoff* v. *State*, (1971) 256 Ind. 97, 267 N.E.2d 165. The burden is on the State to prove beyond a reasonable doubt the voluntariness of the statement or waiver. *Burton* v. *State*, (1973) 260 Ind. 94, 292 N.E.2d 790. In reviewing the trial court's ruling on the voluntariness of a statement or waiver, we do not weigh the evidence, but determine whether there is sufficient evidence to support the trial court's finding. *Raines* v. *State*, (1971) 256 Ind. 404, 269 N.E.2d 378.

Appellants correctly assert that the signing of a waiver form does not conclusively show a valid waiver. *Dickerson* v.

*State,* (1972) 257 Ind. 562, 276 N.E.2d 845. However, there was testimony which would justify the trial court in finding that Detective Shannon read and explained Williams' rights to him and indicated that Williams should sign the form if he wished to waive his rights to counsel and silence. In such circumstances the court could properly have found a knowing and intelligent waiver, absent further factors showing involuntariness. There is no evidence here which suggests physical abuse or threats, unreasonably prolonged[1] interrogation, or deprivation of food, water, or rest, all of which have been condemned as coercive factors. *Montes* v. *State, supra.*

Appellants point out that Williams' statement was made without the presence of an attorney. The absence of an attorney is one factor tending to disprove voluntariness, but it is possible for an accused to make a valid waiver without counsel. Appellants also contend that "Williams is poorly educated and has difficulty in reading English." Yet he testified that he had completed three years of high school, and there is nothing in the record to suggest that the education he received was substandard. Moreover, lack of formal education is more detrimental to the validity of a waiver in those cases in which the accused is merely given an advice of rights form to read for himself. E.g. *Dickerson* v. *State, supra.* Appellants urge that Williams' lack of a felony record indicates that he was inexperienced in dealing with the police; however, Williams admitted that he had given statements and signed rights waivers before. Appellants urge that the waiver and statement were not voluntary because of alleged threats on Williams' life by friends of Gregory Hill. While it is true that threats may render a confession involuntary, *Nacoff* v. *State, supra,* such threats must obviously bear some relationship to the confession to do so. An accused's fear of retaliation by friends of a murder victim has

---

1. While the statement was made five to six hours after Williams surrendered, some of this time was utilized in transporting him to another police station where the polygraph was administered.

no logical connection to his confession of guilt. There is no reason to believe that anyone threatened to harm Williams only if he failed to confess. The statement was not the product of police inducement because of Shannon's representation that he would "see what he could do" for Williams; such a representation is so vague and indefinite that the trial court would be justified in finding that Shannon's statement did not "bring about a confession not freely determined." *Shotwell Manufacturing Co.* v. *U.S.*, (1963) 371 U.S. 341, 348, 83 S.Ct. 448, 453, 9 L.Ed.2d 357. We have held that a confession is inadmissible if obtained by a promise of immunity or mitigation of punishment. *Ashby* v. *State*, (1976) 265 Ind. 316, 354 N.E.2d 192. In *Ashby* the defendants confessed to a robbery during which injury was done to the victim, for which they could have received a life sentence, in return for a promise of a ten-year determinate sentence ("ten flat"). 354 N.E.2d at 193. This vague "promise" falls far short of the *Ashby* mark.

Finally appellants rely on language from *Sparks* v. *State*, (1967) 248 Ind. 429, 229 N.E.2d 642, which states that a confession is voluntary only if "in making it the accused was aware of the probable consequences of his act." 248 Ind. at 433, 229 N.E.2d at 645, and argue that Williams did not understand that the facts he admitted (that he gave Ortiz a sawed-off shotgun after Ortiz announced his intention to shoot Hill) rendered him guilty as an accessory to first degree murder. We did not hold in *Sparks* that a confession is voluntary only when the accused understands the elements of the crime to which he confesses. As the appellants contend in their brief, even many "literate, well-informed citizens" have not mastered the area of criminal law. It is for that reason that an accused undergoing custodial interrogation is entitled to the assistance of counsel in deciding what, if anything, to say. If, having been advised of his right to have an attorney present, a defendant chooses to proceed without legal advice to make a statement, in the mistaken

belief that the content of the statement is exculpatory, he has made a voluntary statement.

We find that the trial court's overruling of appellants' motion to suppress was supported by sufficient evidence.

## II.

Williams' statement was to the effect that on the night of the shooting, he was with Ortiz. They both saw the decedent Hill walk by. Ortiz wanted revenge on Hill for an incident in which Hill supposedly shot at Ortiz and his companions with a shotgun. Ortiz asked Williams to get him a sawed-off shotgun which Williams had previously found and hidden. Williams gave Ortiz the gun, and Ortiz said "that he was going to blow the dudes head off." Williams left Ortiz near the shooting scene, and heard a shot as he hurried away. Williams encountered Ortiz the next day, and Ortiz "said he blowed the dudes head off." Ortiz was identified by his first name, Hector, numerous times throughout the statement, and once by his full name.

After overruling appellants' motion to suppress the statement, the trial court read it to the jury with Ortiz's name replaced by the word "blank" wherever it occurred. This was the only editing performed on the statement. The typed transcript of the statement was admitted into evidence but never displayed to the jury.

Williams testified in his own behalf. He admitted making a statement, but said that the content of the introduced statement was not true. He made the statement because "people on the street" were threatening him, and because Detective Shannon had offered to try to arrange a deal.

In his testimony Williams admitted being with Ortiz on the night of the shooting, but claimed that he had left Ortiz to go see a movie by himself. At the theatre he met a young lady, whose name he could not remember, with whom he walked from the theatre until she was picked up by someone in an automobile. As he then walked home he passed near the

shooting scene and heard a shot. Shortly thereafter he saw two black men running by.

Ortiz and another witness, Dan Shoemaker, testified that Ortiz was with friends playing ball and drinking all night. He denied being with Williams.

Ortiz claims that admission of the edited confession of his co-defendant at their joint trial violated the rule of *Bruton* v. *United States,* (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, and denied him his Sixth Amendment right to confront witnesses against him. He also contends that admission of the confession was erroneous under *Quarles* v. *State,* (1965) 247 Ind. 32, 211 N.E.2d 167. Ortiz denies that excision of his name only was sufficient to prevent the jury from realizing that Ortiz was inculpated by the statement, in view of its obvious references to some other person, and the fact that Ortiz and Williams were tried together.

*Bruton* held that introduction of extra-judicial statements of a co-defendant at a joint trial denied the defendant an opportunity to cross-examine the co-defendant as to his statement and thereby deprived him of his right to confront a witness against him. This result occurs in spite of instruction to the jury that the statement is to be considered only in determining the co-defendant's guilt.[2]

In *Nelson* v. *O'Neil,* (1971) 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222, a co-defendant gave police a confession incriminating O'Neil. The confession was introduced in its entirety. The co-defendant took the stand and denied making the confession. The Supreme Court explained that *Bruton* had held:

> "[W]here the jury hears the codefendant's confession implicating the defendant, the codefendant becomes in substance, if not in form, a 'witness' against the defendant. The defendant must constitutionally have an opportunity to 'confront' such a witness. This the defendant cannot do if the codefendant refuses to take the stand." 402 U.S. at 626, 91 S.Ct. at 1726.

2. *Bruton* was held applicable to the states in *Roberts* v. *Russell,* (1968) 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100.

The Court held that "confrontation" means "confrontation at trial," that is, an opportunity to cross-examine the co-defendant at trial. The Court quoted from *California* v. *Green,* (1970) 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489:

> " '[v]iewed historically * * * there is good reason to conclude that the confrontation clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.' *Id.,* at 158, 90 S.Ct., at 1935. Moreover, 'where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem.' *Id.,* at 162, 90 S.Ct., at 1937." 402 U.S. at 626, 627, 91 S.Ct. at 1726.

The Court concluded that the right of confrontation is denied "only where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross-examination." *Id.*

Ortiz contends that *Nelson* is a narrow holding distinguishable on its facts. This does not seem so. The fact that O'Neil's co-defendant denied having even made his statement was treated by the Supreme Court not as necessary to its holding but as an impediment thereto, since it required the Court to consider whether the co-defendant could be "fully and effectively" cross-examined, in view of his denial of having made the statement. We believe that introduction of Williams' statement, when Williams testified and was available for cross-examination by Ortiz, did not deprive Ortiz of his rights under the Confrontation Clause of the Sixth Amendment.[3]

Ortiz argues that even if admission of Williams' statement did not violate his Federal constitutional rights, it violated his rights under Indiana law as contained in the line of cases culminating in *Quarles* v. *State, supra.* Ortiz correctly asserts that the Federal Constitution prescribes minimum standards

---

3. Ortiz's trial counsel did in fact cross-examine Williams at some length.

which the states must observe, and that each state is free to afford criminal defendants greater rights than the United States Constitution provides.

However, Ortiz's reliance on *Quarles* is misplaced. *Quarles* held that a statement by one co-defendant was not admissible against another. This is a simple application of the hearsay rule; a confession is admissible against its maker as the admission of a party, and no such justification exists for its use against another party.

However, this Court has decided, since *Quarles,* that extra-judicial statements are admissible as substantive evidence when the declarent is available at trial for cross-examination. *Patterson* v. *State,* (1975) 263 Ind. 55, 324 N.E.2d 482 (DeBruler, J., dissenting); *Torrence* v. *State,* (1975) 263 Ind. 202, 328 N.E.2d 214.[4] Williams, having testified at trial, was available for cross-examination by Ortiz. Therefore under Indiana law Williams' confession was admissible against Ortiz, and the trial court did not err in denying Ortiz's motion to suppress the edited version.

## III.

After the trial court overruled Ortiz's motion to suppress, and near the close of the State's evidence, Ortiz moved orally for severance of his trial from Williams. The trial court denied the motion, and Ortiz claims error in this respect.

The severance of trials of co-defendants is governed by Ind. Code § 35-3.1-1-11 (Burns 1975), which states in relevant part:

"(b) Whenever two [2] or more defendants have been joined for trial in the same indictment or information and one or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not

---

4. The United States Supreme Court has held that the use of prior inconsistent statements as substantive evidence does not deny the accused his right to confrontation, provided that the declarant is available for cross-examination at trial. *California* v. *Green, supra.*

admissible as evidence against him, the court shall require the prosecutor to elect one [1] of the following courses:

(1) a joint trial at which the statement is not admitted into evidence;

(2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

(3) granting the moving defendant a separate trial.
In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant."

Indiana Code § 35-3.1-1-12 governs severance motions:

"(a) A defendant's motion for severance of crimes or motion for a separate trial must be made before or at the close of all the evidence during trial if based upon the ground not previously known. The right to severance of crimes or separate trial is waived by failure to make the motion at the appropriate time.

(b) If a defendant's pre-trial motion for severance of crimes or motion for a separate trial is overruled, the motion may be renewed on the same grounds before or at the close of all the evidence during trial. The right to severance of crimes or separate trial is waived by failure to renew the motion."

The State first urges that the in-trial motion was not timely. Section 12(a) allows the motion to be made during trial "if based upon the ground not previously known." Although the statute does not explicitly so state, it implies that a motion for severance should be made before trial, except when based upon grounds which become known during trial.[5]

Ortiz argues that the motion was timely filed because his trial counsel made it as soon as he learned that the trial

5. Prior to the enactment of the present statute in 1973, the former statute specifically required a pre-trial motion. 1905 Acts, ch. 169, § 259, p. 584; after a 1935 amendment, the motion was required to be filed ten days before trial. 1935 Acts, ch. 92, § 1, p. 286. Prior to 1905 the statute did not specify when the motion was to be made, but this Court had held that the motion must be made before trial. *McJunkins* v. *State*, (1858) 10 Ind. 140.

court would *admit* the statement. We believe that when a co-defendant's statement is the basis for a motion for severance of trials, that motion should be made before trial unless the defendant is unaware of the existence or incriminating content of the statement. Here we are unable to determine from the record that Ortiz or his trial counsel knew of Williams' statement before trial, and we will therefore consider the merits of his claim.

Obviously, the first part of § 11(b) dealing with co-defendants' statements, is not applicable here because that provision contemplates a pre-trial motion, allowing the prosecutor to elect between separate trials or non-use of the statement in its unedited form. Ortiz therefore relies on the latter part of the section, which directs the trial court to order separate trials when such are "appropriate to promote a fair determination of the guilt or innocence of the defendant."

We have held that the trial court's decision to grant separate trials under § 11(b) is reviewable only for abuse of discretion. *Tewell* v. *State,* (1976) 264 Ind. 88, 339 N.E.2d 792; *Frith* v. *State,* (1975) 263 Ind. 100, 325 N.E.2d 186. Whether the court has abused its discretion is determined by reference to that which occurs at trial, rather than what the moving defendant alleges as grounds for his request for severance. *Hubbard* v. *State,* (1974) 262 Ind. 176, 313 N.E.2d 346; *McDonald* v. *State,* (1975) Ind. App., 325 N.E.2d 862.

Our separate trials statute incorporates the American Bar Association's *Standards for Criminal Justice, Joinder and Severance,* § 2.3 at 34-35 (Approved Draft, 1968). The comments to that section emphasize that society has more of an interest in joint trial of co-defendants involved in a common scheme than administrative efficiency:

> " 'Such procedure not only increases the speed and efficiency of the administration of justice but also serves to give the jury a complete overall view of the whole scheme and helps them to see how each piece fits into the pattern.' Rakes v. United States, 169 F.2d 739, 744 (4th Cir. 1948).

If separate trials must be held, then 'the defendants will be placed in unequal positions, with some gaining the advantage of disclosure of the Government's case and the possibility of witnesses' deaths and fading memories making proof of the charge more difficult.' United States v. Stromberg, 22 F.R.D. 513, 526 (S.D.N.Y. 1957)." *Id.* at 39.

Joint trials in appropriate cases facilitate not only the efficiency of the trial but also its validity as a fact determination process.

Ortiz contends that denial of his motion for severance was an abuse of discretion because the trial court was required by *Baniszewski* v. *State,* (1970) 256 Ind. 1, 261 N.E.2d 359, to grant his motion. In *Baniszewski,* five co-defendants were tried together; four of these defendants had made confessions or admissions which also incriminated the fifth, who moved for but was denied a separate trial. Only one of the co-defendants took the stand and could be cross-examined by the appellant. This Court found that the appellant in *Baniszewski* was improperly subjected to prejudicial matter against which she could not defend. We said:

"[i]n our opinion a separate trial should be granted where the possibility plainly exists that co-defendants have made serious statements implicating other co-defendants and such statements will be introduced as evidence in the trial." 256 Ind. at 8, 261 N.E.2d at 362.

Since *Baniszewski* was decided, the present severance statute was enacted, giving a defendant in such circumstances the right to compel the prosecutor to elect separate trials or nonuse or editing of the statement. Our Legislature has determined that severance is not the sole remedy available in this situation, and where the Constitution does not compel the use of a particular remedy, we must accept the Legislature's choice.

Since Ortiz cannot avail himself of the statutory election procedure, he must show that in light of what actually occurred at trial, the denial of a separate trial subjected him to such serious prejudice that the trial court may be said to

have abused its discretion in denying Ortiz's motion. Since Williams testified and was subject to cross-examinatoin concerning his statement, we do not believe that Ortiz can show such prejudice. The trial court did not abuse its discretion in denying Ortiz's motion for severance.

## IV.

Appellants jointly complain of a remark made by the prosecutor in his final argument to the jury. Counsel for Ortiz in closing argument said, "The person who took the life of Gregory Hill is still walking free waiting to take the life of someone else. . . ." In rebuttal the prosecutor said:

> "Ladies and gentlemen, the killers Mr. Ortiz and Mr. Williams are not endangering the lives of Gary and running around the street. They are here in court today."

An immediate objection was made but not ruled upon. The prosecutor apoligized to the jury for the injection of his personal opinion and urged them to look solely to the evidence.

Appellants urged that this comment was a statement by counsel of his personal belief as to appellants' guilt in violation of DR 7-106(C)(4) of the Code of Professional Responsibility. The evil to be avoided by this rule is that the jury will infer that counsel has superior or "inside" knowledge of the case, and will therefore give his opinion evidentiary effect. As we said in *Swope* v. *State*, (1975) 263 Ind. 148, 325 N.E.2d 193, 196: "it is not improper for a lawyer to state his conclusion, as long as he does not imply that he has personal knowledge of an accused's guilt or innocence." The prosecutor's remark implies no personal knowledge, notwithstanding the absence of explicit reference to the evidence, but was made to rebut the rhetorical effect of Ortiz's attorney's assertion that the guilty parties were still at large. "Retaliatory responses of this sort are not to be encouraged. However, when kept within reasonable bounds, they are to be judicially tolerated if the values of spirited advocacy are not to be lost altogether." *Clark* v.

*State,* (1976) 264 Ind. 524, 348 N.E.2d 27, 34-35. While it is always preferable that counsel cast their conclusions in forms which clearly indicate that their remarks are based upon their interpretation of the evidence, this statement was not impermissible, and we need not consider its probable effect on the jury.

## V.

After the jury retired to deliberate, its members sent a note to the court requesting the re-reading of Williams' statement. The court called the jury back into the courtroom and read the edited statement.

Appellants allege that this was error, urging that the rationale of *Thomas* v. *State,* (1972) 259 Ind. 537, 289 N.E.2d 508, applies here. In Thomas a witness' written statements were allowed to be taken to the jury room during deliberation. We held this to be error. Thomas, however, clearly explains that the reason for not allowing documentary evidence into the jury room is the danger that the presence of certain testimony in printed form, to which the jurors could continually refer, will result in undue weight being attached to that testimony.[6] This rationale does not require that documentary evidence (or testimony) not be re-read to the jury.

Indiana Code § 34-1-21-6 (Burns 1973) provides in relevant part:

> "After the jury has retired for deliberation, if there is a disagreement between them as to any part of the testimony . . . they may request the officer to conduct them into court, where the information required shall be given. . . ."[7]

We construe this statute to provide that the judge must, on the jury's request, have read to them any properly admitted

---

6. Also, in *Thomas* the statements had been admitted for impeachment purposes only.

7. This statute, part of the Code of Civil Procedure of 1881, has not been superseded by any rules of this Court, and is applicable to criminal prosecutions by operation of Ind. Code § 35-4.1-2-2 (Burns 1975).

testimony or documentary evidence. This holding is compatible with the A.B.A.'s *Standards for Criminal Justice, Trial by Jury,* § 5.2 (a) at p. 134 (Approved Draft 1968), the comments to which note that this is the usual practice. *Id.* at pp. 134-36. There was no error in re-reading Williams' statement.

## VI.

After approximately eight hours of deliberation the court called the jury and inquired whether a verdict had been reached; the foreman said it had not. The court informed the jurors that if they failed to reach a verdict the case would have to be retried, and reminded them of their oath to "well and truly try the case." The court directed the jury to return to the jury room and continue its deliberation. After the jury was returned the court asked counsel for appellants whether appellants would consent to allow the jurors to separate for the night. Counsel had made no decision when the jury returned its verdict, finding both appellants guilty as charged.

Appellants argue that this was an improper "coercive charge," which interfered with the free and independent deliberation of the jury. However, the record shows no objections by appellants to the recalling of the jury or to the court's remarks to them, either before, during or after the episode, although both appellants were present with counsel. Absent an objection to an alleged error at trial, no issue is preserved for this Court to consider. *Hardin* v. *State,* (1970) 254 Ind. 56, 257 N.E.2d 671.

We recognize that the trial court's comments were not delivered as a formal instruction, and that appellants may not have had advance notice of the substance of the remarks the court intended to address to the jury. We think the better practice, whenever the trial court finds it appropriate to address the jury after the deliberations have commenced, would be to inform all counsel of the comments to be made to the

jury, and to so indicate on the record. This might best be done by preparing any such comments as a formal written instruction. Such a practice would allow any objections to be made before the jury is recalled, so as to afford the court maximum opportunity to avoid any harmful error.

However, the failure of the trial court to do so here does not excuse appellant's from the necessity of objecting when they became aware of the trial court's remarks.

## VII.

Appellants finally argue that the evidence was insufficient to support guilty verdicts to first degree murder. In reviewing the issue of sufficiency of the evidence, this Court will not weigh the evidence or resolve questions of credibility of witnesses, but will look to that evidence, and the reasonable inferences therefrom, which support the jury's verdict. *Asher* v. *State,* (1969) 253 Ind. 25, 244 N.E.2d 89. The conviction will be affirmed if, from that viewpoint, there is evidence of probative value from which the trier of fact could reasonably infer the existence of each element of the offense charged, with certainty beyond a reasonable doubt. *James* v. *State,* (1976) 265 Ind. 384, 354 N.E.2d 236.

The crime of first degree murder is defined by Ind. Code § 35-13-4-1 (Burns 1975), which reads in relevant part:

> "(a) Whoever kills a human being . . . purposely and with premeditated malice . . . is guilty of murder in the first degree. . . ."

Appellants argue that there is a lack of evidence of every element of the crime as to Ortiz; that there is insufficient evidence that he killed anyone, or that he did so purposefully or with premeditated malice. They contend that the evidence shows Williams guilty, if at all, as an accessory before the fact, and that his conviction cannot stand unless the guilt of the principal, Ortiz, is shown.

The evidence upon which the jury could have based its verdict was that the decedent, Gregory Hill, was killed by a

massive gunshot wound to the back of his head, caused by a shotgun. Around the time of the shooting and in the same neighborhood one Larry Carpenter saw both appellants, with whom he was acquainted, walking together and saw one of them throw something into some bushes. The witness was unable to describe the item or tell whether it was Ortiz or Williams who had thrown it down.

On the same night Angelia Velez, a friend of both appellants, saw both appellants in the neighborhood of the shooting. Appellant Ortiz came to her home and told her that he had just shot someone.

Appellant Williams gave Detective Shannon a statement, as described above in parts (I) and (II), admitting that he obtained a shotgun in order for Ortiz to shoot the victim. We have previously determined that Williams' statement, as read, was admissible against both appellants.

The jury was justified in believing that Williams gave *someone* a shotgun, knowing that this person intended to use this shotgun to kill Gregory Hill, and that this person actually killed Hill with the gun. This evidence is sufficient to show Williams guilty as an accessory before the fact to the crime committed by the other person, and therefore, equally guilty of that crime. Ind. Code § 35-1-29-1 (Burns 1975).

Appellants argue that no "community of unlawful intent" between Williams and Ortiz was proved, citing *Breaz* v. *State*, (1938) 214 Ind. 31, 13 N.E.2d 952. *Breaz* held that in order for one to be liable as an accessory, it "is sufficient if the previous understanding is substantially carried out." 214 Ind. at 34, 13 N.E.2d at 953. Here Williams' statement was that he gave the unnamed person the shotgun after that person demanded it and announced his intention to "blow [Hill's] head off." The jury could reasonably infer that both Williams and the person to whom he gave the gun knew and intended that it would be used to kill the victim.

Appellants' contention that Williams' conviction will not stand unless Ortiz is shown to be guilty as the principal is not correct. While in the past we have held that an accessary cannot be convicted unless the evidence shows the guilt of the principal, *Murphy* v. *State,* (1915) 184 Ind. 15, 110 N.E. 198, it is not necessary that any particular person be proved to be the principal. It is sufficient that the evidence shows that the crime was committed by some person, and that the accessory aided or abetted that person.

Moreover we believe that there was sufficient evidence to support the jury's verdict finding Ortiz guilty of first degree murder. The evidence that Gregory Hill was killed by a shotgun blast to the back of his head supports an inference that *someone* killed Hill purposely and with malice. As we have often said, malice and purpose may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm. *White* v. *State,* (1976) 265 Ind. 32, 349 N.E.2d 156; *Taylor* v. *State,* (1973) 260 Ind. 264, 295 N.E.2d 600.

Williams' statement that some person (unnamed in the edited version read to the jury) requested a shotgun, announced his intention to blow the decedent's head off, and later told Williams that he had blown the victim's head off, justified an inference that this person intentionally shot Hill in the head, and that he premeditated his design to take Hill's life.

Having concluded that someone, who was with Williams on the night of the shooting, had purposely killed Gregory Hill with premeditated malice, the jury was justified in finding that this someone was appellant Hector Ortiz. The context of Williams' references to the person imply that he was a friend or acquaintance of Williams, who was with Williams on the night of the shooting. Williams admitted on the stand that Ortiz was a friend, and Larry Carpenter saw them together near the time and place of the shooting. Angelia Velez's testimony that Ortiz told her that he had

shot someone renders the inference even more reasonable. We have often held that a conviction will not be upheld upon evidence merely tending to establish a suspicion of guilt, or that the accused had the opportunity to commit the crime, *Dunn* v. *State,* (1973) 260 Ind. 142, 293 N.E.2d 32; *Manlove* v. *State,* (1968) 250 Ind. 70, 232 N.E.2d 874. We are not faced with such evidence here, but with evidence from which the existence of each element of first degree murder could be found beyond a reasonable doubt.

The convictions of appellants Hector Ortiz and Bruce Tyrone Williams are affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 356 N.E.2d 1188.