Samuel GUTIERREZ, William McCall,
James Slagley, Appellants,

v.

STATE of Indiana, Appellees.

No. 778S152.

Supreme Court of Indiana.

Sept. 27, 1979.

Donald P. Levinson, Merrillville, for appellants.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellees.

PIVARNIK, Justice.

Appellants Samuel Gutierrez, William McCall and James Slagley, along with Robert W. Taggart, Sr., and Ray Vagus, were indicted by a Lake County Grand Jury for the unlawful and intentional killing of Leo Sabonis, Sr. Ray Vagus pleaded guilty in exchange for testimony given at trial. Gutierrez, McCall, Slagley and Taggart were tried jointly to a jury in Lake Superior Court, Criminal Division, and all were found guilty. While all of the defendants had separate counsel at trial, Gutierrez, McCall and Slagley prosecute this appeal jointly. Taggart does not join in the present appeal. Some of the issues presented are applicable to all three appellants, while some involve only one or two.

Seven issues are presented for review on this appeal, concerning alleged trial court error in:

(1) denying each of the appellant's numerous motions for severance;

(2) admitting into evidence testimony regarding prior acts of misconduct by these appellants;

(3) denying appellants' motion for mistrial based on references to the incarceration of persons who were allegedly members of an organization to which appellants also belonged;

(4) failing to strike the entire testimony of witness Darryl Breckman;

(5) allowing testimony from a person whose name was not listed on the prosecution's list of witnesses;

(6) denying appellant Slagley's motion to suppress and reject his confession; and

(7) denying appellant McCall's motion to suppress and reject his confession.

I.

Appellants first argue that the trial court erred in refusing to grant their motions for severance. They present two theories in support of this argument. First, they contend that the nature of their defense merited severing their trial from that of Taggart. Second, each of the appellants urges that his Sixth Amendment right to confront the witnesses against him was violated by the trial court's refusal to grant separate trials. We find both of these contentions to be without merit.

Appellants' defenses were based on a theory of duress and coercion by their co-defendant Taggart. They claim the trial court precluded their attempts to present evidence of their fear of Taggart or of the duress under which they allegedly acted. Appellants contend they were unable to "assassinate" Taggart's character in attempting to show their fear of him and the consequent duress. In their view, this prevented them from presenting a "full and complete defense."

■ Under Ind.Code (Burns 1975) § 35–3.1–1–11(b), "the court shall order a separate trial of defendants whenever the court determines that a separate trial . . . is appropriate to promote a fair determination of the guilt or innocence of a defend-

ant." Appellants must show on appeal that in light of what actually occurred at trial, the denial of a separate trial subjected them to such prejudice that the trial court may be said to have abused its discretion in refusing to grant their motions for severance. *Rogers v. State*, (1978) Ind., 375 N.E.2d 1089, 1091; *Ortiz v. State*, (1976) 265 Ind. 549, 561, 356 N.E.2d 1188, 1195.

■ It is true that appellants were prevented in some situations from eliciting certain testimony regarding their fear of co-defendant Taggart. However, much of this evidence would have been either self-serving or in the form of testimony which the particular witness was not qualified to give. Further, appellants were permitted to present competent evidence regarding the duress and coercion under which they allegedly operated. They presented evidence that Taggart was the head of an organization or gang of which they were members. Testimony was also presented which reflected appellants' fears that Taggart would kill them or their families or would have them killed if they did not obey his orders or if they attempted to get out of the gang. In fact, then, it was possible to present a duress defense based on appellants' fear of Taggart without impermissibly assassinating Taggart's character. Thus, the trial court's refusal to allow appellants to attack Taggart's character did not prevent them from presenting a full and complete defense. We find no merit to this argument. The trial court did not abuse its discretion in overruling appellants' motions for severance on this ground.

■ Appellants further argue they should each have been granted severances on constitutional grounds. They contend the confessions of appellants McCall and Slagley contained ineffective deletions of references to co-defendants. Therefore, the argument runs, they were implicated in out-of-court statements which were presented to the jury, and thus denied their Sixth Amendment right to confront the witnesses against them under *Bruton v. United States*, (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. It is true that redact-ed confessions of appellants McCall and Slagley were admitted into evidence and read to the jury. However, we find no error in the trial court's handling of this matter.

*Bruton* involved a situation where the co-defendant who made the out-of-court confession exercised his Fifth Amendment right to not testify at the joint trial. Under those circumstances, if the confession implicates the asserter's co-defendant, the effect of admitting the unredacted confession is to admit evidence which the jury may apply against the asserter's co-defendant, without permitting the co-defendant to cross-examine the asserter. In the case before us, however, appellant Slagley did testify on his own behalf at trial. Therefore, he was subject to cross-examination concerning the confession, and appellants McCall and Gutierrez were not denied their Sixth Amendment confrontation rights by the admission of Slagley's confession. *Bruton v. United States, supra* ; *Ortiz v. State*, (1976) 265 Ind. 549, 558, 356 N.E.2d 1188, 1194.

■ Appellant McCall, on the other hand, chose not to testify at trial. His confession was redacted to delete references to his co-defendants. We think the trial court effectively deleted the impermissible references in McCall's confession. Specific names were deleted from McCall's statement in only seven places. The resulting blanks, however, did not lead to a reasonable inference that McCall was referring to his co-defendants. Several times in the course of his statement, McCall referred by name to other persons who were involved in the events but who were not co-defendants. He also used the pronouns "we" and "he" in describing the activities of himself and other persons who were not necessarily co-defendants. Thus, viewing the redacted form of the statement in its entirety, we believe the redactions effectively shielded appellants Slagley and Gutierrez from the taint of McCall's out-of-court declarations. *Williams v. State*, (1978) Ind., 379 N.E.2d 449; *Rogers v. State*, (1978) Ind., 375 N.E.2d 1089. We find no error as to this issue.

## II.

■ Appellants next urge that the trial court erroneously admitted evidence of appellants' prior misconduct. The prosecution proceeded on the theory that appellants and co-defendant Taggart were members of an organization or gang of which Taggart was the head. The evidence showed that this organization attempted to establish and operate a lottery in several bars in Lake County. The prosecution's theory was that Leo Sabonis was killed because he refused to allow lottery tickets to be sold in his bar. The appellants contend that evidence regarding the proposed lottery confused the issues at trial and caused the jury to convict appellants on "general principles."

■ It is clear that the prosecution was merely trying to show a common scheme or a motive. The attempted distribution of lottery tickets and the subsequent murder of Leo Sabonis were part of this common scheme. While generally evidence of separate, independent and distinct crimes is inadmissible to prove guilt of the primary charge, evidence of other criminal acts is admissible to show intent, motive, purpose, identification, or a common scheme or plan. *Grooms v. State*, (1978) Ind., 379 N.E.2d 458, 462; *Willis v. State*, (1978) Ind., 374 N.E.2d 520, 522; *Pierce v. State*, (1977) Ind., 369 N.E.2d 617, 621. There was no error here.

## III.

Appellants allege error in the trial court's denial of their motions for mistrial, based on evidentiary references to the incarceration and conviction of other organization members. State's witness John Serwatka, in response to questions from the prosecutor, admitted that he has been convicted of four counts of first degree murder. Appellants argue that the State attempted to portray Serwatka as a co-member of the gang, and that the jury probably tended to apply Serwatka's admitted guilt to them and convict them on "general principles" rather than on the merits.

■ First, none of the appellants' counsel objected to this testimony at the time it was elicited. The failure to file a timely objection at trial operates as a waiver on appeal. *Gee v. State*, (1979) Ind., 389 N.E.2d 303, 313; *Bell v. State*, (1977) Ind., 366 N.E.2d 1156, 1160. In addition, we would note that the trial court took special care to insure that the details of Serwatka's conviction were not presented to the jury. There was no improper connection made between Serwatka's illegal activities and appellant's trial. The trial court did not err in admitting this evidence.

■ Appellants also argue that they were prejudiced by witness Robert Gonzales' discussion of membership in the gang. When asked who the other members of the organization were, the witness stated: "Well there's four of them sitting in the courtroom now and the others are in jail. There are seven altogether." Record at 1739. The statement does not refer specifically to convictions obtained against other organization members. Further, even if the jury was somehow influenced by this brief reference to the legal status of other gang members, we cannot say, from an examination of the entire record, that this testimony was so prejudicial to appellants' case that they were denied a fair trial. We find no error as to this issue.

## IV.

■ The next allegation of error concerns the trial court's failure to strike certain testimony. Witness Darryl Breckman, under cross-examination by appellant Slagley's counsel, was asked several questions concerning felonious plans he allegedly had. Breckman invoked his Fifth Amendment right and refused to answer. Appellants now argue that the trial court should have struck his entire testimony. However, none of appellants' counsel objected, or requested an instruction to answer, or moved to strike the testimony. Thus, this issue has been waived. *Gee v. State, supra*; *Bell v. State, supra*. Furthermore, the matters Breckman was questioned on were merely collateral issues re-

lating to his credibility. The scope of cross-examination on such matters is subject to the broad discretion of the trial court. *Murphy v. State*, (1977) Ind., 369 N.E.2d 411, 416; *Pulliam v. State*, (1976) 264 Ind. 381, 385–86, 345 N.E.2d 229, 235. We cannot say the trial court abused its discretion by failing to raise this collateral issue *sua sponte*.

## V.

The State called as a witness in its case in chief one Deloris Vagus. Appellants objected, pointing out that Mrs. Vagus' name did not appear on the State's list of witnesses. For that reason, they claimed that she should not be allowed to testify. The prosecutor asserted that he was not aware that Mrs. Vagus would be a witness until less than two weeks before trial and after the list of witnesses had been provided to the defendants. The prosecutor explained in a sidebar conference the expected substance of the witness' testimony, and the trial court allowed her to testify. Her testimony related solely to the chain of custody of the lottery tickets which were introduced into evidence.

■ The conduct of discovery in criminal cases is left largely to the discretion of the trial court. *Cochran v. State*, (1978) Ind., 378 N.E.2d 868, 870; *State ex rel. Keller v. Criminal Court of Marion County*, (1974) 262 Ind. 420, 429, 317 N.E.2d 433, 438. Given the short amount of time between the State's realization that Mrs. Vagus had relevant testimony to give and the trial itself, it does not appear that the State blatantly disregarded the pre-trial discovery order. *See Upshaw v. State*, (1976) Ind.App., 352 N.E.2d 102. Nor does it appear from the record that the State attempted to conceal this witness or surprise the appellants with her testimony. In fact, Mrs. Vagus also appeared as a defense witness on behalf of appellant McCall. Appellants have not shown how their inability to depose the witness or obtain a continuance of the trial prejudiced them. We hold, under the facts and circumstances of this case, that the trial court did not err in allowing Deloris Vagus to testify.

## VI.

Appellant Slagley argues the trial court erred in denying the motion to suppress his confession. It appears from the record that Slagley gave two statements, one to Gary city police and one a week later to a Lake County sheriff. At the hearing on the motion to suppress, the trial court ordered the first statement suppressed on the ground that Slagley had requested and not received permission to talk to any attorney prior to giving the statement. The motion to suppress was denied as to the second statement, however, because the trial court found that Slagley had executed a knowing and voluntary waiver of his rights. Appellant Slagley challenges this ruling on two grounds.

■ First, he argues that the second statement was impermissibly tainted by the fact that Slagley had given an inadmissible statement a week earlier. He speculates that he probably would not have given the second statement had he known the first was illegal and inadmissible. In other words, he claims the illegal first statement caused the second statement. We recently disposed of this argument in *Johnson v. State*, (1978) Ind., 380 N.E.2d 1236, 1241:

> "Even if the first statement had been obtained illegally, appellant's position would be incorrect. Appellant's theory is premised on the idea that once a defendant has 'let the cat out of the bag' *United States v. Bayer*, (1947), 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654, any subsequent *Miranda* warnings are meaningless unless there are factors intervening which tend to show that the later confessions are voluntary, independent of the initial statement. We think this is but another way of stating the general rule that the voluntariness of any custodial statement must be determined from an examination of the totality of the facts surrounding its making. *Murphy v. State*, (1977) Ind., 369 N.E.2d 411, 414."

Thus, the inadmissibility of the first statement does not *necessarily* taint the second

statement and render it inadmissible, unless the second statement was thereby involuntarily given.

Appellant Slagley's second contention is that the second statement was, in fact, made involuntarily. As we noted in *Johnson v. State, supra,* voluntariness is to be determined from a totality of the circumstances. In making this determination, this Court will treat the issue like any other sufficiency question. We will not reweigh the evidence; rather, we will determine only whether there was substantial probative evidence to support the trial court's finding. *Richardson v. State,* (1978) Ind., 373 N.E.2d 874, 875; *Murphy v. State, supra.*

The evidence shows that Slagley read and signed a waiver of rights form prior to giving the second statement. The officer who took the statement, Darryl Longfellow, testified that he gave Slagley the *Miranda* warnings on more than one occasion after the first statement and prior to the second statement. Slagley admitted that he was specifically advised by Longfellow that he had a right to remain silent. He also admitted that he asked to speak to Longfellow specifically on several occasions, including a number of times prior to giving the second statement. In light of this and other testimony adduced at the suppression hearing, we think there was substantial evidence from which the trial court could have found that this statement was given voluntarily. There was no error in denying appellant Slagley's motion to suppress his second confession.

## VII.

Appellant McCall also argues that his confession was given involuntarily, and that the trial court therefore erred in denying his motion to suppress the confession. The confession which was admitted into evidence was only a portion of a much longer statement in which McCall admitted taking part in a series of slayings. Different portions of this *same* statement were placed into evidence at other trials in which McCall was a defendant. In an earlier appeal from a conviction for two murders which are not at issue in the present case, appellant McCall challenged the voluntariness of *this same statement.* While obviously a different portion of the statement was admitted into evidence in that earlier case, it was the voluntariness of the entire statement which was at issue before this Court on appeal. After extensively discussing the evidence pertaining to this question, this Court found that this statement had been given voluntarily. *See Gutierrez v. State,* (1979) Ind., 388 N.E.2d 520. We see no reason to change that determination. Appellant McCall's motion to suppress was properly denied.

The judgment of the trial court is affirmed.

All Justices concur.