**Allenn Glenn PETERSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 382S105.**

Supreme Court of Indiana.

Sept. 14, 1983.

Peter L. Benjamin, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Allenn Glenn Peterson was convicted of Murder, Ind.Code § 35–42–1–1 (Burns Repl.1979), Rape (class A felony), Ind.Code § 35–42–4–1 (Burns Repl.1979), and Robbery (class B felony), Ind.Code § 35–42–5–1 (Burns Repl.1979), at the conclusion of a jury trial in Lake Superior Court on October 22, 1981. The defendant was sentenced to a term of forty-five (45) years for the murder, thirty-five (35) years for the rape, and thirty (30) years for the robbery. Sentences for the murder and rape were ordered to be served consecutively; the sentence for the robbery was ordered to be served concurrent with the sentence imposed for the rape. Peterson now appeals.

Peterson raises three errors on appeal, concerning: 1) whether the trial court erred

in admitting color photographs of the victim after the cause of death was established; 2) whether the trial court erred in refusing to suppress the defendant's statement given to the police; and, 3) whether the trial court erred in denying the defendant's motions for mistrial.

On March 11, 1981, the defendant spent the day with Robert Watkins. They were at the home of Kevin Lee Thomas from about 11:30 a.m. until 4:30 or 5:00 p.m., and spent most of that time drinking beer. Thomas stated that though he knew Watkins and Peterson used drugs, none were consumed at his house on that day. Both Watkins and Peterson were known to study and practice karate. After leaving Thomas's home, they went to the home of Watkins and there the defendant killed Watkins by stabbing him several times and beating him. When Watkins' mother, Bessie White, arrived at home at approximately 9:30 p.m. on that day, she was met at the door by Peterson. Peterson then raped her and left her tied and gagged. The house was in total disarray and Watkins' body was found under a mattress. There was shaving cream on Watkins' face, covering one eye, and there were some lewd messages written in shaving cream on various places throughout the house. Peterson gave a statement to the police in which he said he and Watkins were practicing karate and he accidentally injured Watkins during the encounter. An autopsy revealed the cause of death was multiple stab wounds to the chest and abdomen, lacerating the heart and lungs.

## I

There were four color photographs admitted into evidence showing the victim's body taken from different angles, depicting not only the body's position but also the general disarray of the room. Defendant contends that the trial court abused its discretion in admitting these color photographs since the cause of death had already been established by the coroner's report and they did nothing more than inflame the jury since their prejudicial character outweighed their probative value. These pho-

tographs, however, showed the body as it was discovered by the police and demonstrated its position in relation to the entire scene of the crime. The fact that a photograph is gruesome and might arouse the jury is not sufficient ground in itself to justify its exclusion from the evidence if it is material and relevant. A test to be applied when photographs are admitted into evidence is whether a witness would be permitted to describe verbally the subject of the photographs. *Rowan v. State*, (1982) Ind., 431 N.E.2d 805, 816–17; *Jackson v. State*, (1981) Ind., 426 N.E.2d 685, 687. These photographs could reasonably be determined to be helpful to the jury in identifying the crime scene and the position of the body and its condition. We therefore cannot say the trial court abused its discretion by admitting them into evidence.

## II

Defendant filed a motion to suppress his statements, alleging that the statements were made under a promise of reward and were not freely and voluntarily given. This motion was denied by the trial court.

Police Officer Gerald Rodda stated that the defendant was read his constitutional rights, was asked if he understood them, and was given a form, setting out his rights, to read, all before the defendant gave a statement. He signed a waiver and indicated that he understood his rights. A statement was then taken from him. Prior to this; all of the defendant's clothes, except his underclothes, had been taken from him when he was brought into the jail in the early morning hours so they could be examined. This took place in March and it was chilly in the cell. Defendant was cold and shivering when he was brought from his cell and the police found clothing for him and gave him coffee to drink. Rodda did not remember exactly when this was done, perhaps a couple of hours before the statement was taken. Later, a second and shorter statement was taken from the defendant for the purpose of straightening out a few facts. The same procedure was followed in the taking of this statement as was taken

with the first one. The only claim of any promise made to the defendant to induce him to give a statement was the allegation that Rodda told him that if he told the truth, the judge would be lenient with him. Rodda and other police officers present denied that, stating that no promise was ever made to the defendant. They said there was no discussion about what the judge would do but they asked the defendant if he wished to give a statement and he agreed to do so.

The only other claim the defendant makes about the involuntariness of his statements was that he had been drinking beer and smoking pot to a great extent during the previous day. He argues he was still under the influence of the beer and pot to the extent that he could not freely and voluntarily waive his rights and give a confession. The police testified that the defendant did not appear to be under the influence of liquor or narcotics, or drugs of any kind, that he seemed coherent, and that he was able to freely and openly discuss the incidents with them. They gave him coffee and cigarettes and took several breaks during the three hour period of the first statement. The second statement took about twenty minutes.

In reviewing the trial court's ruling on the voluntariness of a statement or waiver, we do not weigh the evidence but determine whether there is sufficient evidence to support the trial court's finding. In determining whether a statement was voluntarily given or whether a waiver of the *Miranda* rights has occurred, we look to all the circumstances surrounding its giving to determine whether it was induced by any violence, threats, promises, or other improper influence. *Ortiz v. State,* (1976) 265 Ind. 549, 553, 356 N.E.2d 1188, 1191; *Montes v. State,* (1975) 263 Ind. 390, 399, 332 N.E.2d 786, 792; *Nacoff v. State,* (1971) 256 Ind. 97, 101, 267 N.E.2d 165, 167.

Here, any claims of inducement or involuntariness are supported only by the defendant's bald statements and those claims are contradicted by testimony of the police officers. The trial court had the duty to resolve these conflicts and he resolved them against the defendant. Defendant does not claim he was threatened or coerced, but said he had been drinking beer and smoking pot 12 or more hours before he gave the statement and the police officers had told him the judge would be more lenient toward him if he told the truth. Though his contention as to a promise of leniency is in conflict, assuming, *arguendo,* the general statement was made, it is questionable that it would have the effect of rendering his statement inadmissible due to the generally vague and indefinite character of the promise. *Long v. State,* (1981) Ind., 422 N.E.2d 284, 286.

We find no error in the trial court's denial of the defendant's motion to suppress his confessions.

### III

During cross-examination of the defendant by the prosecuting attorney, defense counsel moved for mistrial on two different occasions and these motions were denied by the trial court. The first alleged error occurred when the prosecuting attorney was questioning the defendant as to why Watkins' trousers were down around his ankles and he was nude, if, in fact, he had been accidentally killed during karate practice. The prosecutor finally asked the defendant if he had, in fact, raped Robert Watkins as well as Watkins' mother, and the defendant answered: "No." Defendant did not object at that time but later, while the jury was absent from the court room, the defendant then also moved for mistrial on this question, alleging that he was not charged with any sexual assault on Watkins and therefore this amounted to an "evidentiary harpoon" to prejudice the defendant before the jury. The State contends that it had a right to cross-examine the defendant on this issue since it would tend to show a motive for the killing. The trial court found the question was not improper and denied the motion. Defendant did not request that the jury be admonished. We think the court properly found this was not an instance of prosecutorial misconduct nor

did the question place the defendant in such grave peril that the court was required to declare a mistrial. Certain facts from the autopsy indicated that the victim may have been sexually assaulted. It was not improper for the prosecuting attorney to inquire into all the facts and circumstances of the encounter between the defendant and the victim, and the trial court properly denied the motion for mistrial on these grounds.

The second motion for mistrial was made in regard to the following:

"Q. All right; and you forgot what happened sometime in the past, too, between the time it happened and before you came to trial; isn't that true?

A. Yes.

Q. And you talked to some doctors and you forgot everything; isn't that true?

A. Not exactly."

Defense counsel then objected to this line of questioning, claiming it was outside the scope of direct examination and asking that it all be stricken. The trial court sustained the defendant's objection to the last question and admonished the jury to disregard it and not speculate as to what any answer might have been. Defendant's objection on appeal is that the questioning violated the trial court's order *in limine,* which had directed that no questions be asked regarding the state of the defendant's sanity. Defendant had earlier interposed a defense of insanity but had later withdrawn it and had asked for a motion *in limine* to preclude reference to the issue of sanity before the jury. Now the defendant contends that the State violated that order *in limine* and the trial court erred by not granting a motion for mistrial. The defendant claims he was prejudiced before the jury since the question of his talking to doctors would reveal to them some questions about his sanity.

We first note that the grounds raised by the defendant here on appeal are substantially different than those raised by objection at trial. That, of course, would amount to a waiver of the issue and we would not consider it here. *Davidson v. State,* (1982) Ind., 442 N.E.2d 1076, 1079; *Andrews v. State,* (1982) Ind., 441 N.E.2d 194, 198.

■ It appears, however, that even if we should not consider this a waiver the trial court properly handled the matter. It is within the sound discretion of the trial court to grant or deny a motion for mistrial and it will be reversed only when an abuse of that discretion is shown. *Abrams v. State,* (1980) Ind., 403 N.E.2d 345, 348; *Blackburn v. State,* (1979) 271 Ind. 139, 144, 390 N.E.2d 653, 656–57. Here the trial court did admonish the jury to disregard the question and not to speculate as to any answer. Furthermore, it is questionable that the reference to "doctors" necessarily indicated to the jury that the issue of insanity had originally been raised. It therefore appears that the action taken by the trial court sufficiently cured the prejudicial effect of the question. We find no error on this issue.

Finding no reversible error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.