ROGER DALE ASHBY AND STEVEN BERNARD CORLEY *v*.
STATE OF INDIANA.

[No. 375S54. Filed September 17, 1976.]

*James L. Kiely*, of Evansville, for appellants.

*Theodore L. Sendak*, Attorney General, *Robert M. Lingenfelter*, Deputy Attorney General, for appellee.

DEBRULER, J.—Appellants were convicted of inflicting injury in the course of a robbery and were sentenced to life imprisonment. In this appeal, they contend that the trial court erred in permitting the State to introduce oral statements made to the police while in custody because the statements were induced by a promise to mitigate punishment.

On March 10, 1974, a filling station in Evansville, Indiana was robbed by two men and the attendant beaten with a hammer by one and cut with a knife by the other. A third man, stationed nearby, drove the two men to and from the station, and was well aware of their criminal intentions. Almost immediately after the crime the third man called the police and identified appellants as having been the two men who had just robbed the filling station. Appellants were quickly arrested.

While appellants were in custody the officer in charge of the case took the case file to a deputy prosecutor. At this office it was decided that a charge of inflicting an injury in the commission of a felony would be brought but that the State would accept a determinate term of imprisonment of ten years flat in lieu of the life sentence provided for such offense. The charge was then filed by the officer, and warrants issued.

The officer then went to the jail and talked to both appellants. He told them that a charge of inflicting had been brought against them. In the following colloquy at the

hearing on the motion to suppress, the officer supplied a description of that meeting:

"Q. And what did you offer them?
A. I told them that if they would be willing to give me a statement to their acts in this robbery, and would be willing to plead that they would be allowed to plead guilty to armed robbery, or robbery rather than inflicting an injury, with the stipulation that they would take an executed ten year sentence.
Q. Did you tell them how many years they could get out under that type of deal?
A. I told them that they would more than likely be eligible for parole in something like 7½ or 8 years.
Q. And did you tell them what they would get if they were found guilty of the inflicting an injury?
A. It carries a life sentence.
Q. Did you tell them that?
A. Yes, sir.

\* \* \*

Q. Then did they accept your offer?
A. Yes, sir.

\* \* \*

Q. And did they, in fact, give you a statement?
A. Yes, sir."

After the written statements were completed, appellants were returned to their cells. The next morning appellants were taken before the circuit court for an initial appearance on the charge. Following that proceeding, they were returned to their cells. Shortly thereafter the officer who procured the written statements received a call from a deputy sheriff and was informed that appellants wanted to see him. He went over to the jail and the three then conferred. This conference was described by the officer as follows:

"Q. What did they say to you when you arrived there?
A. They were, as I said the other day, they were rather upset because they weren't allowed to plead guilty on their appearance earlier that day, that morning in Circuit Court for their initial appearance and they thought that I was to trick them, if you will, by not, by the fact that they couldn't plead guilty at that time that the original charges were read as they stood prior

to their confession. I explained to them that the Judge would not allow them to plead guilty without first consulting with an attorney and in all probability they would be allowed to still plead guilty after they talked to their attorney following their subsequent appearance in Court. At this they seemed pretty well satisfied.

Q. Did they talk to you further then?

A. Then it got to me [sic] more a casual joking type conversation. Ashby said, 'Well, I was just going to tell you if that is the way it is going to be, O.K., but if you are really trying to trick us, you are a S.O.B.' So, as I said, it continued more as a casual joking thing.

Q. During that period of time did they make any statements to you about, spontaneously or not in response to any questions of them asked by you or any other Police Officer?

A. Yes, they did.

Q. What was that?

A. Ashby said that, something to the effect that, 'I don't see how he could identify me, I wasn't in there more than five minutes. I spent most of my time around front looking for a money bag and a gun.' or something to that effect. I said, 'Five minutes is quite a long time. I believe a guy could study you fairly well in that length of time.' He said, 'Well, maybe it wasn't quite that long but I spent most of my time out front.'

Q. Did Corley make any such statements or comments? Spontaneously or not in response to any questions asked by you or any other Police Officer?

A. Specifically, the only thing I can remember Corley saying was that he would like for me to see what I could do about getting him sent to Michigan City rather than one of the other correctional institutions; that he heard that they had some type of schooling there and he made the remark, 'If I could get out in seven years, I'll still be young enough to be a hippy.' "

At another point in the transcript the same officer repeated his description of that same meeting:

"Q. What did they speak to you about?

A. Basically, they were rather upset because, I assume, they were under the impression that they would be allowed to plead Guilty that morning in Circuit Court and they called me a few choice names, thought I was tricking them. I tried to explain to them that

Judge Miller would not permit them to plead Guilty without first appointing a counsel and allowing them to confer with him for some time and that they would be arraigned at a later date at which time they would be given this opportunity.

Q. And they were complaining to you that they weren't permitted to plead Guilty to the flat ten years by the Judge of the Vanderburgh Circuit Court on that date?

A. That is correct."

Following the hearing on the motion to suppress, the trial judge suppressed the written confessions given on the 18th, but ruled that the oral incriminating statement given the next day on the 19th was admissible. Appellants contend that the oral statement given on that day was involuntary as well, and that its introduction at trial was in violation of the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution.

It is a clear constitutional principle that a confession or admission of the accused is inadmissible if it was obtained by a promise of immunity or mitigation of punishment. *Shotwell Manufacturing Co.* v. *United States,* (1963) 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed. 357; *Smith* v. *United States,* (1954) 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; *Sorenson* v. *United States,* (8th Cir. 1906) 143 F. 820. The test in resolving a Fifth Amendment claim resting upon the Self-Incrimination Clause was set forth from several cases in the opinion by Justice Harlan in *Shotwell, supra.* There, quoting from *Bram* v. *United States,* (1897) 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568, he stated:

"The controlling test is that approved in Bram: 'A confession, in order to be admissible must be free and voluntary; that is, ***not*** obtained by any direct or implied promises, however slight****' " 371 U.S. at 347, 83 S.Ct. at 453.

He continued, quoting from *Rogers* v. *Richmond,* (1961) 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760:

"A coerced confession claim, whether founded on a promise of immunity or otherwise, always involves this question:

did the governmental conduct complained of 'bring about' a confession 'not freely self-determined?' " 371 U.S. at 348, 83 S.Ct. at 453.

This is the same test which must be applied in determining whether a waiver of rights under *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, has been voluntarily given. When a coerced confession or coerced *Miranda* waiver claim is made in Indiana, the burden is on the State to prove that such confession or waiver was voluntary beyond a reasonable doubt. *Burton* v. *State*, (1973) 260 Ind. 94, 292 N.E.2d 790; *Magley* v. *State*, (1975) 263 Ind. 618, 335 N.E.2d 811.

And, in considering whether the State has met its burden, "We will consider the evidence which supports the decision of the trier of fact in the case of contested evidence, and any uncontested evidence presented by the appellant." *Magley* v. *State, supra,* at 335 N.E.2d 818.

In this case there is no conflict in the evidence relative to the voluntariness of any of these statements. They were all made while in custody. While we are not apprised on the record of the reason this case went to trial instead of being disposed of on the basis of a plea of guilty, no claim is made by the State anywhere that appellants failed in their obligations under the agreement reached or that the State's expectancies under the agreement might not have been fulfilled. The facts of this case are simply that the officer induced appellants to confess to the crime of inflicting an injury in the course of a robbery by his direct representation to them that by confessing, they would be able to secure a "ten flat" sentence instead of a life sentence. The next day they made an initial court appearance. Following that appearance the oral incriminating statement introduced at trial was made as part of a conversation in which they asked the same officer whether the deal was still on. He replied that it was.

The trial court correctly perceived that appellants' claim was based upon the Self-Incrimination Clause of the Fifth

Amendment to the United States Constitution. That provision is, of course, applicable in the courts of Indiana. *Malloy* v. *Hogan,* (1964) 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. And he correctly applied its principles in finding that the written confessions were involuntary and inadmissible. He did however, err in refusing to also suppress the oral statements made the next day during the continued discussion of the agreement. Those oral statements, like the former written ones, were "brought about" by the representation of the officer that their punishment would be mitigated. At the time of the oral conversation, the officer reaffirmed his representation made the day before. Statements induced by such representations are not freely self-determined.

As the oral statements were involuntary and also inadmissible, this case must be reversed and the case remanded for a new trial.

Hunter, J., concurs; Prentice, J., concurs and dissents with opinion; Givan, C.J., dissents with opinion in which Arterburn, J., concurs.

#### CONCURRING AND DISSENTING OPINION

PRENTICE, J.—Although I agree that the judgment must be reversed, I do not agree that the words from *Bram* v. *United States,* 18 S.Ct. 183, that a confession, in order to be admissible must not be "* * * obtained by any direct or implied promises, however slight, * * *" may be applied literally and with such rigor as indicated by Justice DeBruler. Neither do I agree, however, as indicated by Chief Justice Givan in his dissent, that the State may induce a confession by representations as to the sentence that will be imposed in exchange. There appears to be some confusion of the standards by which we judge the validity of guilty pleas with those by which we judge the voluntariness of confessions.

We have a controlling statute in this state, the constitutionality of which does not appear to have been challenged. Unless and until it is held to have constitutional infirmities, it should be accorded full faith and credit.

"The confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him, *except when made under the influence of fear produced by threats or by intimidation or undue influences;* but a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence. Acts 1905, ch. 169, § 239, Burns 35-1-31-5." (Emphasis added)

The issue in this case is, therefore, not whether the defendant's initial confessions and subsequent incriminating statements were induced but rather, whether they were induced by "undue influences." Although the determination must, of necessity, be made retrospectively, it must, nevertheless, be made in the light of the circumstances as they were at the time given and not in view of subsequent developments, which were then unknown.

The written confessions were found by the trial judge to be inadmissible—undoubtedly because they were unduly influenced. The officer who took them freely acknowledged that they were given in exchange for a commitment from the State for a ten year sentence as opposed to a life term. Such inducement was improper because the State lacked the authority to fulfil its commitment, such being the exclusive province of the trial judge. True, under our present case law the parties could bargain for a guilty plea, subject to the approval of the court. Neither party, however, is bound by the bargain, unless and until it is exposed to the judge; and he alone may give it viability. If he disapproves it, it is not admissible in evidence by either party.

The record does not disclose why the plea bargain aborted, but it is immaterial; as the State was impotent. It could do no more than to make a recommendation to the court. Had the State merely agreed to make such a recommendation in return for the confessions, a commitment that it could deliver and thus had a right to give, and if all the other circumstances evidenced a free and knowing choice by the defendants, their confessions would have been admissible under the statute. Here, however, they clearly were unduly influenced by a

promise which the State could not perform. As such, it was a false representation.

The conversation between the defendants and the deputy on the day following the giving of the confessions obviously were part and parcel of the same guilty plea negotiations. That the statements made therein were then voluntary and not obtained by trickery or false or misleading statements given in the same conversation is immaterial. They were, nevertheless, part of an on-going transaction which, although it may have been undertaken in good faith by the State was, nevertheless, tainted by an improper inducement. As such, they should have been excluded from evidence.

### DISSENTING OPINION

GIVAN, C.J.—I respectfully dissent from the majority opinion in this case. I do not think the representations made by the police officers in this case, as outlined in the majority opinion, rise to the stature of a promise, direct or implied, as discussed by the United States Supreme Court cases cited by the majority.

The police officers had told the appellants they would be given an executed ten-year sentence if they entered a plea of guilty to armed robbery. This representation was made by the police officers after consultation with the prosecuting attorney. There is nothing in the record to indicate that there was anything false or misleading in such a promise. The fact of the matter remains that appellants, for whatever reason known to them, chose not to enter a guilty plea, but chose to stand trial by jury. I do not perceive that there was any trickery, misrepresentation or denial of due process by reason of the action of the police officers. I do not think the United States Supreme Court cases cited by the majority are pertinent to the issues in this case.

In the cases of *Anderson* v. *State*, (1933) 205 Ind. 607, 186 N.E. 316 and *Matthews* v. *State,* (1959) 239 Ind. 252, 156 N.E.2d 387, this Court has held that mere statements by

police officers as to the amount of sentence an accused would receive do not render his confession inadmissible. I would affirm the judgment of the trial court in this case.

NOTE.—Reported at 354 N.E.2d 192.