Jerry A. **PAMER**, Appellant (Defendant Below),

v.

**STATE of Indiana**, Appellee (Plaintiff Below).

No. 3–281A45.

Court of Appeals of Indiana, Third District.

Oct. 29, 1981.

Harriette Bailey Conn, Public Defender, M. E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Jerry A. Pamer guilty of burglary,[1] a Class C felony. The trial court sentenced Pamer to eight years' imprisonment. On appeal, Pamer raises the following issues for review:

(1) Did the trial court err in denying Pamer's pretrial motion to suppress his written confession and in admitting the confession at trial?

(2) Did the trial court err in admitting tangible evidence and testimony about Pamer's oral confession that were obtained after Pamer was confronted with his written confession?

(3) Is the jury's verdict supported by sufficient evidence?

Affirmed.

## I.

### Written Confession

Pamer contends that his written confession was made involuntarily because (1) during custodial interrogation, police officers induced him to confess to several bur-

glaries, including the one for which he was convicted in the present case, by a direct promise of immunity from prosecution, and (2) the confession was a product of an unreasonable delay between Pamer's arrest and his initial appearance before a judge. Because the confession was made involuntarily, Pamer contends that the confession should have been suppressed and that it was improperly admitted at trial over his objection.

 The proper analysis for determining the admissibility of a confession has been delineated by the Indiana Supreme Court in *Long v. State* (1981), Ind., 422 N.E.2d 284, 285–86; *Chandler v. State* (1981), Ind., 419 N.E.2d 142, 147; *Battle v. State* (1981), Ind., 415 N.E.2d 39, 42; and *Love v. State* (1980), Ind., 400 N.E.2d 1371, 1372. It must be determined from the totality of the circumstances whether the confession was made voluntarily and not through inducement, violence, threats, or other improper influences so as to overcome the free will of the accused. The State bears the burden of proving beyond a reasonable doubt that (1) the protective guidelines of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, were scrupulously honored to protect the accused's Fifth Amendment privilege against self-incrimination; (2) the accused knowingly, voluntarily, and intelligently waived the "*Miranda* rights"; and (3) the accused's eventual confession was the product of an essentially voluntary, free, and unconstrained choice. The issue of voluntariness is a matter for the trial court to resolve. As in other sufficiency matters, the appellate court will not weigh the evidence or assess the credibility of the witnesses in reviewing the propriety of the trial court's ruling on the admissibility of the confession. If the evidence is conflicting, only that evidence that tends to support the trial court's ruling will be considered on appeal. The reviewing court's function is to determine whether substantial evidence of probative value supports the trial court's ruling.

---

1. IC 1976, 35–43–2–1 (Burns Code Ed., 1979 Repl.).

The circumstances under which Pamer made his written confession are as follows: In the late hours of February 20, 1980, several police officers responded to a report of a burglary in progress at a Radio Shack store in Syracuse which is located in Kosciusko County, Indiana. Pamer was apprehended inside the store and was arrested for the commission of a burglary. While being transported to jail, Pamer requested to talk with David Hobbs, Chief of the Milford Police Department. Pamer asked for Hobbs' assistance because Pamer thought Hobbs "could offer me some kind of deal like if I would plead guilty to the charge I was picked up on, that they'd lower it or something like so it would be easier for me." Pamer knew Hobbs from a prior theft incident for which Pamer was convicted on January 3, 1980, and received probation in lieu of imprisonment.

Police business prevented Hobbs from meeting with Pamer until the evening of February 22, 1980. At 9:15 that evening, Pamer, Hobbs, and Lieutenant Richard Mikel of the Kosciusko County Sheriff's Department met at the Kosciusko County Jail to discuss the Radio Shack burglary. Pamer was immediately advised of his "*Miranda* rights," and he then read and signed a standard waiver of rights form (State's Exhibit No. 2). From that point in the interrogation, the subsequent events are best explained by Lt. Mikel's testimony at trial:

"A. After we read him his rights and he signed the waiver we talked about the Radio Shack, asked him if he wanted to give us a statement as to his involvement in it even though we had caught him inside.

"And he gave a little thought, of course, and decided, yes, he would give us a statement.

"So we took a statement from him on the Radio Shack. And after we got that done, we had another break-in earlier that night in Syracuse which we had him as a suspect but that's as far as we could get it at that particular time; asked him if he'd like to talk about that.

"He, at first, didn't know anything about it. So we talked there for a little time. And I told him that since he's involved in one, if he'd like to get it cleared up, I could do my best and almost guarantee him he could get charged with one break-in in our county if—

"Q. (Interrupting) Would you repeat that last part?

"A. I told him that I would do my best and I could almost promise him that he would be charged with only one break-in in our county."

Hobbs verified Mikel's recitation of the substance of their interrogation of Pamer, but Hobbs used more positive language in explaining the type of "deal" that could be arranged if Pamer confessed to other offenses:

"Q. All right. Do you recall talking to him at all about the—if he would talk to you about Pacer or talk to Detective Mikel about Pacer, that you would only charge him with one count in Kosciusko County?

"A. Yes, sir, we explained it to Mr. Pamer that within our county, that any other burglary that he may have committed within that county, that he would only be charged with one and that one being Radio Shack located in Syracuse."

Mikel and Hobbs testified that they were authorized by the Kosciusko County Prosecutor, Michael L. Miner, to negotiate plea agreements for "non-serious charges." The primary purpose of vesting the officers with authority to negotiate plea agreements was to promote administrative efficiency in "clearing the records" of unsolved offenses when an individual agrees to plead guilty and be punished for one of the offenses. Miner testified that he would honor a "deal" struck by the officers when a series of minor offenses were involved.

Pamer accepted the offer of a "deal" and proceeded to confess to other burglaries he committed. Pamer first confessed to burglarizing a Pacer service station in Koscius-

ko County. He then began to discuss a burglary of an establishment called "Leisure Time." As soon as Pamer mentioned the words "Leisure Time," Mikel and Hobbs stopped Pamer and informed him that Leisure Time was located in Elkhart County, Indiana, and that no prosecutorial immunity could be offered for any offenses committed outside of Kosciusko County. After being informed that the Leisure Time burglary would not be part of the "deal," Pamer stopped his confession and asked to make a telephone call. Pamer called his girl friend to determine "who else was supposed to have broken in there and . . . to check with somebody before I went ahead and said anything." The testimony of Mikel and Hobbs again best explain the events that occurred after Pamer made his telephone call. Mikel stated:

"A. Okay. After he hung up the phone he sat there for a little bit. And I'm sure he was in deep thought and nobody said nothing to him, we just sat there.

"Pretty soon he looked up and looked like he had a little relief on his face and said, I'm going to get it off my mind.

"Q. Did you know what he was referring to?

"A. Right.

"Q. What was he referring to?

"A. The break-in at Leisure Time.

"Q. Did he understand at that time because you told him that that was not part of any deal in Kosciusko County?

"A. Yes, sir."

Hobbs stated:

"A. Yes, sir, it must have been a few minutes after, I don't know how many minutes after he had been talking to somebody on the telephone, he made the statement or the suggestion that he was wanting to clear up his problems and that he wanted to go ahead with the statement.

"Q. Was this after you had advised him that you had no authority for an Elkhart County crime?

"A. Yes, sir, after we advised him of that and after he had made the phone call and then explained that he'd just as soon go ahead and make the statement. He just asked us what we thought he may get out of Elkhart County and we advised him again we had no idea what he would get in Elkhart County."

Pamer then confessed to committing the Leisure Time burglary with Leo Perry sometime in January of 1980. After that confession, Pamer confessed to a fourth burglary. All four confessions were reduced to writing and were signed by Pamer in the presence of Mikel and Hobbs.

Sometime after Pamer was interrogated by Mikel and Hobbs, Elkhart County authorities learned of Pamer's confession to the Leisure Time burglary. On March 7, 1980, Detective Gary Kenawell of the Elkhart County Sheriff's Department interrogated Pamer about the burglary. Kenawell began the custodial interrogation by advising Pamer of his "*Miranda* rights." After Pamer waived those rights, Kenawell confronted Pamer with the Leisure Time confession he gave to Kosciusko County authorities. Pamer admitted having burglarized Leisure Time and described the items and money he and his accomplice took from the establishment. Elkhart County authorities then charged Pamer with the Leisure Time burglary. In prosecuting the case, the State relied heavily upon Pamer's written confession given to Kosciusko County authorities (State's Exhibit No. 5). Pamer was convicted of the burglary, and he now appeals that conviction.

 Pamer contends that the trial court erred in failing to suppress his written confession because it was improperly induced by a promise of prosecutorial immunity. Pamer relies upon *Ashby v. State* (1976), 265 Ind. 316, 354 N.E.2d 192, in which the Supreme Court held:

"It is a clear constitutional principle that a confession or admission of the accused is inadmissible if it was obtained by a promise of immunity or mitigation of punishment. *Shotwell Manufacturing Co. v. United States*, (1963) 371 U.S. 341,

83 S.Ct. 448, 9 L.Ed.2d 357; *Smith v. United States*, (1954) 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; *Sorenson v. United States*, (8th Cir. 1906) 143 F. 820. The test in resolving a Fifth Amendment claim resting upon the Self-Incrimination Clause was set forth from several cases in the opinion by Justice Harlan in *Shotwell, supra*. There, quoting from *Bram v. United States*, (1897) 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568, he stated:

'The controlling test is that approved in Bram: "A confession, in order to be admissible must be free and voluntary: that is, * * * not * * * obtained by any direct or implied promises, however slight * * *."' 371 U.S. at 347, 83 S.Ct. at 453.

"He continued, quoting from *Rogers v. Richmond*, (1961) 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760:

'A coerced confession claim, whether founded on a promise of immunity or otherwise, always involves this question: did the governmental conduct complained of "bring about" a confession "not freely self-determined"?' 371 U.S. at 348, 83 S.Ct. at 453."

*Ashby, supra*, 265 Ind. at 320–21, 354 N.E.2d at 195. Since *Ashby*, the constitutional principle that a promise of immunity or mitigation of punishment renders a confession inadmissible has been reiterated by the United States Supreme Court in *Hutto v. Ross* (1976), 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194, 197, and on numerous occasions, by Indiana courts. *See, Long v. State* (1981), Ind., 422 N.E.2d 284, 286; *Turner v. State* (1980), Ind., 407 N.E.2d 235, 238; *Love v. State* (1980), Ind., 400 N.E.2d 1371, 1373; *Turpin v. State* (1980), Ind., 400 N.E.2d 1119, 1121; *Harrison v. State* (1978), 269 Ind. 677, 683, 382 N.E.2d 920, 924, *cert. denied* (1979), 441 U.S. 912, 99 S.Ct. 2010, 60 L.Ed.2d 384; *Ortiz v. State* (1976), 265 Ind. 549, 555, 356 N.E.2d 1188, 1192; *Ward v. State* (1980), Ind.App., 408 N.E.2d 140, 143; *White v. State* (1980), Ind.App., 404 N.E.2d 1144, 1146; *Perry v. State* (1978), Ind.App., 374 N.E.2d 558. A "mild promise of leniency" is deemed sufficient to bar a confession "given by a defendant in custody, alone and

unrepresented by counsel." *Brady v. United States* (1970), 397 U.S. 742, 754, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 759. A confession induced by a promise of leniency or prosecutorial immunity is barred "not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess." *Id.* The United States Supreme Court's ban on reward-induced confessions extends constitutional protection to "a person, accused or suspected of crime, to whom a policeman, a prosecutor, or an investigating agency has made a promise of immunity or leniency in return for a statement," because under those circumstances, "an inculpatory statement would be the product of inducement, and thus not an act of free will." *Shotwell Mfg. Co. v. United States* (1963), 371 U.S. 341, 348, 83 S.Ct. 448, 453–54, 9 L.Ed.2d 357, 364.

▮▮▮ The Indiana Supreme Court has refused to extend its *Ashby* decision to cases that have not involved "direct or implied promises" of immunity or leniency. The Court has carefully distinguished a number of cases in which statements by police officers were so "vague and indefinite" as to fail to constitute inducements sufficient to render the confessions involuntary. *See, Long, supra; Love, supra; Turpin, supra; Harrison, supra; Ortiz, supra.* A mere exhortation by the police that it would be better for the accused to tell the truth when unaccompanied by a promise of immunity or leniency does not render a subsequent confession involuntary. Statements by the police such as "seeing what they could do for him," "his cooperation might help in assisting him," or it would "be in his best interest to tell the real story" are not sufficient inducements to preclude admission of a subsequent confession as evidence. *See, Long, supra; Turpin, supra; White, supra.*

▮▮▮ The present case involves much more than a mere exhortation to tell the truth. Mikel and Hobbs, with the prior

authorization of the county prosecutor, made a direct promise of immunity in exchange for Pamer's confession to other offenses he may have committed. The promise made by Mikel and Hobbs rose to the level of a guarantee that Pamer would be prosecuted only for the Radio Shack burglary and would receive immunity for other offenses to which he confessed. However, during custodial interrogation, Pamer was specifically informed that no prosecutorial immunity could be guaranteed for the Leisure Time burglary, which occurred outside of Kosciusko County. In fact, both Mikel and Hobbs stopped Pamer immediately after he uttered the words "Leisure Time" and informed him that Leisure Time was outside of their jurisdiction and beyond the scope of any "deal" they could offer Pamer. After making a telephone call to a person who knew some of the details of the Leisure Time burglary and after a period of reflection, Pamer decided to confess to the Leisure Time burglary to "clear up his problems" and to "get it off [his] mind." These facts lead to the unerring conclusion that no promise, direct or implied, of prosecutorial immunity for the Leisure Time burglary was made by Mikel and Hobbs, and Pamer understood that limitation. Nevertheless, Pamer voluntarily chose to give a cathartic confession to the Leisure Time offense.[2]

■ Pamer denies knowing or having been told that Leisure Time was located in Elkhart County and that no immunity would be extended for the Leisure Time burglary. This testimony directly conflicted with the version of the custodial interrogation related by Mikel and Hobbs. It is not for the reviewing court to resolve this conflict. When conflicting evidence exists as to what representations were actually made before the accused gave a confession, the reviewing court will not disturb the trial court's ruling. *Ball v. State* (1981),

Ind., 419 N.E.2d 137, 141; *Turner, supra,* 407 N.E.2d at 239.

■ Pamer also challenges the admissibility of his written confession on the ground that it was a product of an unreasonable delay between his arrest and his initial appearance before a judge. Pamer relies upon IC 1976, 35–5–5–3 (Burns Code Ed., 1979 Repl.),[3] which provides:

"In any criminal prosecution by the state of Indiana, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of the delay in bringing such person before a judge if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six [6] hours immediately following his arrest or other detention:

"Provided, That the time limitation contained in this section shall not apply in any case in which the delay in bringing such person before a judge beyond such six [6] hour period is found by the trial judge to be reasonable, considering the means of transportation and the distance to be traveled to the nearest available judge."

The Supreme Court stressed the importance of complying with IC 35–5–5–3 when it stated:

"There is a heavy responsibility placed upon state officials to bring an arrestee before a neutral and detached magistrate without undue delay. An arrestee must be brought before a magistrate for a probable cause determination within 24 hours of being placed in custody except where Sunday intervenes, in which case

---

2. Kosciusko County authorities fulfilled their part of the "deal" struck by Mikel and Hobbs, Pamer pleaded guilty to the one count of theft pursuant to a plea agreement that required the imposition of a two-year term of imprisonment.

3. During its 1981 regular session, the Legislature repealed IC 35–5–5–3 and other statutes regulating confessions. The repeal of those statutes is effective September 1, 1982. *See,* IC 35–5–5–3 (Burns Code Ed., 1981 Supp.).

the arrestee can be detained no longer than 48 hours. IC § 18–1–11–8 [Burns 1974]. A delay in bringing an arrestee before a magistrate will not render a confession inadmissible if the judge finds the delay to be reasonable and the confession voluntary. IC § 35–5–5–3 [Burns 1975]. . . ."

*Pawloski v. State* (1978), 269 Ind. 350, 358, 380 N.E.2d 1230, 1234. The rationale for imposing a "heavy responsibility" upon law enforcement officers to comply with IC 35–5–5–3 was stated succinctly by the Supreme Court:

"The advisement of rights necessary to protect a suspect's fifth Amendment rights is a function which, inherently, is more effectively discharged by a neutral and detached magistrate. To paraphrase Justice DeBruler, if a member of the Police Department does not take any steps to present a suspect to a magistrate for an advisement of rights, it is unlikely the officer has any interest in being certain the suspect actually understands the nature of those rights. *Williams v. State* . . . [(1976), 264 Ind. 664, 348 N.E.2d 623]. That inference is aggravated when, as here, the police testify that they are unable to recall whether a written advisement of rights and waiver form was tendered to defendant prior to the conversation." (Brackets added)

*Richey v. State* (1981), Ind., 426 N.E.2d 389 (1981). However, a delay in taking the accused before a judge does not render a confession inadmissible as a matter of law, but it is one of many factors to be considered in determining the admissibility of the confession. *Battle, supra,* 415 N.E.2d at 42; *Turner, supra,* 407 N.E.2d at 238. Some of those factors are enumerated in IC 1976, 35–5–5–2 (Burns Code Ed., 1979 Repl.) (repealed effective September 1, 1982).

As it did in *Richey, supra,* the State in the present case failed to explain its failure to take Pamer before a judge before he confessed to the Leisure Time burglary. However, as the Supreme Court did in *Richey,* this Court concludes that Pamer's confession was not a product of the police

officers' failure to take him before a judge for an advisement of his constitutional rights. First, Mikel and Hobbs advised Pamer of his *"Miranda* rights," and Pamer read and signed a standard waiver of rights form before interrogation began. Furthermore, Mikel and Hobbs did not delay Pamer's appearance before a judge for the purpose of extracting a confession from Pamer. Immediately after his arrest, Pamer requested to talk with Hobbs in hope of striking a "deal" as he had done on a previous occasion. Hobbs was unable to travel to the Kosciusko County Jail until two days after Pamer's arrest. Based on this evidence, the making of his confession beyond the six-hour period prescribed in IC 35–5–5–3 did not vitiate the voluntariness of Pamer's confession. The trial court did not err in admitting Pamer's written confession.

## II.

### Tangible Evidence & Oral Confession

Pamer's second contention of error is directed toward the interrogation of Pamer conducted on March 7, 1980, by Detective Kenawell of the Elkhart County Sheriff's Department. After advising Pamer of his *"Miranda* rights," Kenawell confronted Pamer with the written confession to the Leisure Time burglary he gave to Kosciusko County authorities. Pamer immediately acknowledged the veracity of the confession. He added to its details by stating that he and his accomplice took two clock radios, a CB radio, and $60.00 in change from vending machines in Leisure Time. Pamer stated that the money was divided and the clock radios were left with Pamer's brother-in-law. After the interrogation, Kenawell went to the house of Pamer's brother-in-law, Juan Olivo, who voluntarily gave the clock radios to Kenawell. The radios were admitted as evidence at trial (State's Exhibits Nos. 3 & 4).

Pamer contends that the trial court erred in (1) admitting the clock radios as evidence, and (2) permitting Kenawell to testify to the inculpatory statements made by Pamer during interrogation. Pamer argues

that the tangible evidence and the oral confession were the "fruits of the poisonous tree," with the poisonous tree being the purportedly involuntary confession he gave to Kosciusko County authorities. The written confession, Pamer contends, "let the cat out of the bag" and thereby caused him to make an oral confession to Kenawell.

First, Pamer predicates his argument upon the erroneous premise that his written confession was made involuntarily. As Pamer's confession was not obtained illegally and was admissible at trial, evidence obtained through information contained in that confession was also properly admissible. *Turner, supra,* 407 N.E.2d at 239. Second, assuming *arguendo* that Pamer's written confession was inadmissible and a "poisonous tree," his argument must fail in light of the Supreme Court's rejection of the proposition that confessions made after an involuntarily-made confession are not inadmissible as a matter of law. *Holleman v. State* (1980), Ind., 400 N.E.2d 123, 126; *Gutierrez v. State* (1979), Ind., 395 N.E.2d 218, 223–24; *Johnson v. State* (1978), 269 Ind. 370, 378, 380 N.E.2d 1236, 1241. Subsequent confessions must be subjected to the traditional analysis for determining the admissibility of any confession. The record contains no evidence that vitiates the voluntariness of the statements made by Pamer to Kenawell.

### III.

#### Sufficiency of Evidence

The brevity of Pamer's third assignment of error permits its reproduction in its entirety:

"The State had the burden of proving beyond a reasonable doubt that Defendant Pamer committed the crime charged. Evidence which is properly objected to and should have been suppressed is not properly available to support a verdict. In this case if Pamer's confessions had been suppressed as well as the testimony of Officer Kenawell and the physical evidence derived as a result of the confessions, the only probative evidence before the jury would have been that a robbery occurred. There is no evidence, which was properly admitted, which in any way implicates Pamer. Thus, the verdict is not supported by sufficient evidence."

Pamer's argument merits a brief response:

"The defendant's sufficiency of the evidence challenge presumes the improper admission of his confession. However, since we have held that his confession was properly admitted, this is a moot issue. *Fleener v. State*, (1980) Ind., 412 N.E.2d 778."

*Kern v. State* (1981), Ind., 426 N.E.2d 385 (1981).

Affirmed.

GARRARD, J., concurs.

HOFFMAN, P. J., concurs in result.