Charles Thomas LORD, Appellant,

v.

STATE of Indiana, Appellee.

No. 26S00-8711-CR-1058.

Supreme Court of Indiana.

Dec. 8, 1988.

Rehearing Denied March 8, 1989.

**208**

Timothy R. Dodd, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

■ A jury trial resulted in a finding of guilty of Murder, for which appellant was sentenced to fifty (50) years; Attempted Criminal Deviate Conduct While Armed With a Deadly Weapon, a Class A felony, for which the trial judge imposed no sentence; and a finding that appellant was an habitual offender, for which appellant received a sentence of thirty (30) years. This Court *sua sponte* notes that the trial court erred in sentencing appellant in that the status of habitual offender is not a separate offense. It is merely a fact which, when found by a jury, requires the trial court to enhance the sentence for the instant crime by the statutory term. This cause, therefore, will be remanded to the trial court for its determination as to the enhancement of the fifty (50) year sentence imposed on appellant for the crime of Murder.

The facts are: On September 6, 1986, appellant and Fredrick Michael Thompson were riding around in appellant's automobile and each consumed a couple of beers. They eventually went to a secluded area and parked the car where an altercation ensued between the two concerning the company Thompson had been keeping with other men in the community.

A few days earlier appellant had found a handgun near a dumpster and on the evening in question had it in his belt. During the altercation, homosexual overtures were made by appellant to Thompson, who became prostrate on the ground. Appellant was on his knees on top of Thompson. Appellant later stated that he intended to shoot the gun over Thompson's head to "settle him down" but that Thompson's foot hit his hand causing the gun to point lower and fire at the same time. The bullet struck Thompson behind the ear, killing him. Appellant stated he then panicked and rolled Thompson's body into a nearby open cistern and placed the cover over it. On September 24, 1986, Thompson's body was discovered in the cistern.

■ Appellant claims his incriminating statements to police officers should have been suppressed because he was questioned after he requested appointment of counsel. There is no question that at any time during custodial interrogation when the prisoner indicates his desire for counsel the interrogation must stop, and it cannot be continued until the arrested person either employs counsel or has counsel appointed. The only exception to this rule is if the accused person spontaneously initiates further contact with the police indicating his desire to make a statement without the presence of counsel.

In the case at bar, appellant had voluntarily come to the police station to consult with the officers after Thompson's body was discovered. Appellant first was given full *Miranda* warnings then voluntarily submitted to a polygraph examination following which he gave a statement in which he freely admitted the facts above recited. Following this admission to the police officers, appellant stated: "I can't afford a lawyer, but is there any way I can get one?"

In ruling on a motion to suppress, the trial judge gave a written memorandum to defense counsel and to the State in which he ruled that appellant's statement concerning counsel appeared to be in the nature of queries regarding future access to counsel for a court hearing and should not be interpreted as a request for counsel at that time. The trial court cited *Heald v. State* (1986), Ind., 492 N.E.2d 671.

The case at bar differs from the *Heald* case in that in *Heald* the defendant interrupted the police during the *Miranda* warnings to say she wanted to see an attorney. The policeman then indicated he wished to finish the *Miranda* warning, which he did. At that time, Heald was asked if she then wished to talk to counsel. However, she specifically waived counsel at that time. In the case at bar, appellant at no time, pursuant to a direct question by the police, expressly waived his right to counsel following his statement above quoted.

█ we would assume for the sake of argument that appellant should not have been interrogated following his statement concerning counsel, we nevertheless find that no reversible error occurred in view of the fact appellant had made a complete confession before inquiring about a lawyer. An examination of the statements made by appellant after that time clearly demonstrate that he made no additional statement nor did he contradict anything he had stated previously. Appellant suffered no prejudice by the interrogation which followed his inquiry concerning a lawyer. *Malott v. State* (1985), Ind., 485 N.E.2d 879.

Appellant also claims his confessions were coerced because the interrogating officer proposed that if appellant would talk they would promise that a deal would be cut with the prosecuting attorney. In the case at bar, no direct promise was made to appellant by the police officers.

The officers stated:

"If I could get George down here right now and tell him the truth, if I could get him down here and you were willing to tell him the truth, and I could cut him a deal, would you ... would you talk to

him? If I could promise you ... if I could promise you ... if I could promise you he'd cut a deal with you, would you then talk and tell the truth?"

This was followed by a statement by the officer:

"[I]f I can get him down here, would you tell the truth, if he'd cut you a deal?"

█ It is obvious from this language the officer was not making any promise or offering to make a deal himself. He was merely asking appellant "what if" the prosecutor would make a deal, would appellant then be willing to talk. This Court has held that such vague and indefinite statements do not constitute improper promises. *Long v. State* (1981), Ind., 422 N.E.2d 284; *Perry v. State* (1978), 176 Ind.App. 120, 374 N.E.2d 558.

When the entire transcript of the interrogation is examined, it becomes clear that the officers in this case did not induce appellant's statements by making improper promises. The trial court did not err in allowing the statements into evidence.

Appellant claims the habitual offender finding was improper because one of the supporting felonies showed on its face that he was not afforded the aid of counsel during a plea of guilty and that he was unable to understand the trial judge at that hearing because of the judge's alleged speech impediment.

In the case at bar, as in *Smith v. State* (1985), Ind., 477 N.E.2d 857, the records of prior convictions purport verity. *Anderson v. State* (1981), Ind., 426 N.E.2d 674; Ind.Code § 34-1-17-7. As pointed out by the State, if matters *dehors* the record would indicate an improper sentencing, appellant may raise those questions by the use of post-conviction remedies. *See Mills v. State* (1987), Ind., 512 N.E.2d 846.

█ We would point out that the trial court did allow appellant to present evidence in the form of his own testimony regarding his understanding of his prior convictions. The court instructed the jury that if they were convinced that appellant was not adequately represented by counsel at his prior hearing they could find that his

prior conviction was invalid and the State had not carried its burden of showing two prior convictions; thus, the matter was fully presented to the jury. They made a determination based upon the evidence presented by both sides that appellant twice previously had been convicted of a felony. The finding of the status of habitual offender is fully justified by the record in this case.

This cause is remanded to the trial court for correction of the sentence insofar as the habitual offender status is concerned. The court is in all other things affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DeBRULER, J., dissents with separate opinion.

DICKSON, J., concurs in result without separate opinion.

DeBRULER, Justice, dissenting.

At 1:27 p.m. on September 25, 1986, appellant accompanied the police to the Evansville Regional Laboratory, where he was given a polygraph examination. It was preceded by the execution of a polygraph waiver form. The form is entitled "POLYGRAPH WAIVER". The body contains the standard *Miranda* warnings. The final paragraph contains the statements, "I do wish to take the polygraph test" and "I am signing this statement after having been advised of my rights and before taking the polygraph test." Appellant signed the form. After the test was administered, appellant was interrogated for five hours. At 5:00 p.m. he was told that if he would provide the interrogators with something worthwhile, they could induce the prosecutor to come there and he would make a deal. Appellant agreed and confessed. The confession was not used to induce the prosecutor to join in, and no deal was offered.

At 6:20 p.m. on September 25, 1986, the same day, after having given his oral confession, he was given the standard *Miranda* warnings, signed the waiver form, and proceeded to make a detailed and recorded confession, repeating his prior oral confession.

Following the recording session, the following colloquy occurred:

(Defendant) I can't afford a lawyer but is there anyway I can get one?

(Officer) Yeah

(Defendant) Is there anyway I can talk to some doctor or someone too?

(Officer) Well, that will be up to the ... that will be up to the Court or up to your attorney....

(Defendant) The only thing I was wondering about is if I could go home tonight and somebody pick me up tomorrow....

Whereupon appellant was formally arrested and cuffed. The police then repeatedly asked appellant if he would show them what he had done with the murder weapon at the crime scene. They then went to the crime scene with appellant but apparently did not locate the weapon. Appellant gave a third statement the following morning which did not differ substantially from the first two.

The polygraph waiver did not constitute an advice of the right to remain silent and to have counsel present during an interrogation session which might follow the administration of the polygraph test, but in meaning and in context was limited instead to the questions and answers given during that test, and thus there was no effective waiver of those rights prior to the following interrogation of appellant which resulted in his oral confession. That confession, and the recorded repetitions of it were not admissible against him in a criminal trial. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The confessions were also inadmissible as they were obtained by a promise of immunity or mitigation of punishment. *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). *Ashby v. State* (1976), 265 Ind. 316, 354 N.E.2d 192. Furthermore, the oral testimony describing appellant's conduct and statements following his request for counsel were inadmissible, and erroneously admitted. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378

(1981). The burden was upon the State to prove, beyond a reasonable doubt, that appellant's confessions were admissible. *Burton v. State* (1973), 260 Ind. 94, 292 N.E.2d 790; *Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811. The State failed to satisfy this burden in this case. The judiciary is assigned and has assumed the burden of safeguarding the constitutional privilege against self-incrimination and right to counsel. To do so here requires that appellant's convictions be reversed and the case remanded to the trial court for a new trial at which appellant's confessions are suppressed.