# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2018, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Lemon
Knox, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jerry Leonard,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 28, 2018<br><br>Court of Appeals Case No.<br>18A-CR-436<br><br>Appeal from the Starke Circuit Court<br><br>The Honorable Kim Hall, Judge<br><br>Trial Court Cause No.<br>75C01-1703-FA-1 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jerry Leonard (Leonard), appeals his convictions for two Counts of child molesting, Class A felonies, Ind. Code § 35-42-4-3(a)(1).

We affirm.

# ISSUES

Leonard presents two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by admitting Leonard's statements made during a video interview, in which he ultimately confessed to the crime; and

(2) Whether the State presented sufficient evidence beyond a reasonable doubt to support Leonard's conviction of one Count of Class A child molesting.

# FACTS AND PROCEDURAL HISTORY

Leonard is the step-father to A.H. born in 2001. Between 2010 and 2012, A.H. lived in Knox, Starke County, Indiana, with Leonard and her mother (Mother). At the time, A.H. was about eleven or twelve years old.

One evening while A.H.'s mother was sleeping, Leonard approached A.H., who was "sitting on the floor watching TV in the living room." (State's Exh. 3 at 15:05). Leonard asked A.H. to "expose" herself so that "he could release." (Tr. Vol. II, p. 93). Leonard proceeded to masturbate in front of A.H. During another incident Leonard touched A.H.'s vagina and "clit" with his "lips" and

A.H. expressed to Leonard that it "tickled." (State's Exh. 3 at 14:44, 15:05). After a couple of months had passed, Leonard and A.H. were in the garage fixing Leonard's car. Mother was in the house, and Leonard expressed to A.H. that he would fix the car "all faster if [A.H.] pulled her shorts down." (State's Exh. 3 at 15:05). Leonard laid down a blanket and asked A.H. to lie down. Leonard pulled down A.H.'s pants and proceeded to "lick A.H.'s genitals" while "masturbating." (Tr. Vol. II, p. 50). In another incident, when A.H. was "probably twelve" years old and Mother was not home, Leonard found A.H. "laying on the bed in the bedroom." (State's Exh. 3 at 15:00; 15:13). Leonard asked A.H. if she could "pull her pants down." (State's Exh. 3 at 15:00). While looking at A.H., Leonard masturbated and then "ejaculated onto a rug." (State's Exh. 3 at 15:00). Lastly, one evening when A.H. was about twelve years old and Mother was in another room sleeping, Leonard attempted to have anal sex with A.H. During that event, Leonard found A.H. laying on the pullout couch. Leonard curled behind A.H. and groped her. The incident "escalated" as Leonard pulled down A.H.'s shorts and began rubbing his penis against A.H.'s buttocks. (Tr. Vol. II, p. 51). A.H. became uncooperative and she complained that Leonard was "hurting" her. (Tr. Vol. II, p. 53). At that point, Leonard bellowed, "you push out logs bigger than this." (Tr. Vol. II, p. 54). Based on A.H.'s complaint, Leonard stopped.

[6] After experiencing some financial difficulties, Mother, Leonard, and A.H. moved in with Mother's brother in Miami County. Sometime thereafter, A.H. began having terrible nightmares and panic attacks. After a particularly bad

night, A.H. was unable to focus at school, and she disclosed to her friend that Leonard had molested her. The mother of A.H.'s friend contacted the Department of Child Services (DCS).

[7] On March 2, 2017, a DCS employee interviewed A.H. at school. During the recorded interview, A.H. disclosed that Leonard had molested her and masturbated in front of her. The next day, March 3, 2017, Leonard was transported to the Miami County Sheriff's Department where Detective Josh Maller (Detective Maller) of the Indiana State Police conducted the interview. Leonard was not in handcuffs, and before the interview began, Detective Maller advised Leonard of his *Miranda* rights. Leonard stated that he understood his rights, he signed the waiver form, and he agreed to proceed. Leonard initially denied molesting A.H. or doing anything sexually inappropriate. After about an hour, Detective Maller left the room for about ten minutes. Upon returning, he asked Leonard if he needed to use the restroom and Leonard declined. During the second phase of the interview, Detective Maller began by stating that he believed that A.H. was telling the truth. Detective Maller stated that his primary goal was to try and "fix things" and to help A.H. and Leonard in whichever way he could. (State's Ex. 3 at 14:07). Leonard kept quiet for a moment and finally expressed, "Yes. I have done shit." (State's Ex. 3 at 14:36). Leonard admitted to all of A.H.'s molestation allegations, all of which he stated occurred "probably five-six years ago" in his home in "Knox." (State's Ex. 3 at 14:36). Specifically, Leonard stated that when A.H. was about eleven or twelve years old, he had touched her vagina with his hands and lips.

Leonard additionally described an instance where he stood behind A.H. and rubbed his penis on her bare buttocks. Also, Leonard admitted that he had masturbated in front of A.H. on at least two occasions.

[8] On March 8, 2017, the State filed an Information, charging Leonard with Counts I and II, child molesting, Class A felonies; and Counts III and IV, performing sexual conduct in the presence of a minor, Class D felonies. On January 8, 2018 through January 11, 2018, a jury trial was conducted. At the close of the evidence, the jury found Leonard guilty as charged. On February 8, 2018, the trial court held a sentencing hearing. Pursuant to the State's motion, the trial court dismissed Counts III and IV, performing sexual conduct in the presence of a minor, Class D felonies. At the close of the sentencing hearing, the trial court sentenced Leonard to concurrent terms of thirty years on each Class A felony child molesting conviction.

[9] Leonard now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Admissibility of the Recorded Confession*

[10] Leonard contends that the trial court abused its discretion by admitting into evidence his statements to Detective Maller during his video interview. He argues his statements were involuntary under both the United States and Indiana Constitutions.

[11] The decision whether to admit a confession is within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Jones v. State*,

655 N.E.2d 49, 56 (Ind. 1995). If a defendant challenges the voluntariness of a confession under the United States Constitution, the State must prove the statement was voluntarily given by a preponderance of the evidence. *Pruitt v. State*, 834 N.E.2d 90, 114 (Ind. 2005). The Indiana Constitution, however, requires the State to prove beyond a reasonable doubt that the defendant voluntarily waived his rights and that the confession was voluntarily given. *Id.* at 114-15.

[12] When evaluating a claim that a statement was not given voluntarily, the trial court is to consider the totality of the circumstances, including whether there is police coercion, the length, location, and continuity of the interrogation, and the maturity, education, physical condition, and mental health of the defendant. *Malloch v. State,* 980 N.E.2d 887, 901 (Ind. Ct. App. 2012), *trans denied.* Indeed, a confession is voluntary if it is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *Id.* at 902. The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence. *Id.* While deceptive police interrogation tactics weigh heavily against the voluntariness of a confession, they do not automatically render a confession inadmissible. *Id.* Rather, they must be considered based on the totality of the circumstances. *Id.* On appeal, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness. *Id.* at 901. We examine the evidence most favorable to the State, together with the reasonable inferences that can be drawn

therefrom. *Id.* If there is substantial evidence to support the trial court's conclusion, it will not be set aside. *Id.*

[13] Leonard contends that during the interview, Detective Maller informed him several times that "he was guilty" and that he "needed help." (Appellant's Br. p. 12). He claims that Detective Maller also informed him "he could help him get to his family sooner if he admitted things." (Appellant's Br. p. 12).

[14] In support of his claim that his confession was given involuntarily, Leonard likens his case to *Ashby v. State*, 354 N.E.2d 192 (Ind. 1976). In *Ashby*, the defendants were arrested on suspicion of inflicting injury during the course of a robbery, which carried a possible life sentence. *Id.* at 194. While the defendants were in custody, the officer in charge of the case took the case file to a deputy prosecutor. *Id.* It was decided that the State would accept a ten-year sentence in lieu of a life sentence, and the charge was filed. *Id.* The officer then returned to the defendants and told them that they would get a ten-year sentence instead of a life sentence if they would admit their actions and plead guilty. *Id.* The defendants confessed to the crime, but, for unknown reasons, the case eventually proceeded to a trial instead of being disposed of via guilty plea. *Id.* The defendants' confessions were admitted into evidence at trial, and they were convicted and sentenced to life in prison. *Id.* The defendants appealed, arguing that their confessions should not have been admitted into evidence because they were induced by a promise to mitigate punishment. *Id.* They contended that the introduction of their confessions at trial was in violation of the privilege against self-incrimination guaranteed by the Fifth

Amendment to the United States Constitution. *Id*. In analyzing the defendants' argument, our supreme court stated:

> It is a clear constitutional principle that a confession or admission of the accused is inadmissible if it was obtained by a promise of immunity or mitigation of punishment. The test in resolving a Fifth Amendment claim resting upon the Self-Incrimination Clause . . . is . . . : A confession, in order to be admissible, must be free and voluntary: that is, not obtained by any direct or implied promises, however slight. A coerced confession claim, whether founded on a promise of immunity or otherwise, always involves this question: did the governmental conduct complained of bring about a confession not freely self-determined?

*Id*. at 195 (internal citations omitted).

[15] Since *Ashby*, our courts have refused to extend the precedent *Ashby* sets to cases which do not involve "direct or implied promises" of immunity or leniency. *Pamer v. State*, 426 N.E.2d 1369, 1374 (Ind. Ct. App. 1981) (holding that "[S]tatements by the police such as 'seeing what they could do for him,' 'his cooperation might help in assisting him,' or it would 'be in his best interest to tell the real story' are not sufficient inducements to preclude admission of a subsequent confession as evidence."). In *Turner v. State*, 682 N.E.2d 491, 494-95 (Ind. 1997), our supreme court held that urging a suspect to help himself by telling the police the truth does not constitute a promise of leniency. Also, in *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004), our supreme court held that the interrogating officer's statements to a defendant that "there's a way you can work around this" and that defendant would have no future unless he was

honest about what had happened, did not constitute a promise or threat that rendered that defendant's confession involuntary. To conclude, in *Malloch,* 980 N.E.2d at 902, this court determined that the detective's statements to the defendant were too vague and indefinite to constitute promises of leniency or mitigated punishment where the detective told the defendant that if he accepted responsibility for his crime, it would show the trial court that he was remorseful.

[16] Turning to the facts at hand, we observe that at the beginning of the video interview, Leonard is seen sitting by himself in the interrogation room, and there was a bottle of water next to him. After Detective Maller joined Leonard, he went over each of Leonard's rights, and Leonard stated that he "understood" all of his rights. (State's Exh. 3 at 13:08). Before signing the waiver-of-rights form, Detective Maller asked Leonard if he understood the meaning of "coercion," and Leonard stated that he "understood that part." (State's Exh. 3 at 13:08). In addition, Leonard was advised that the door was unlocked and that he could leave the interview at any time if he asked. During the interview, Leonard repeatedly denied molesting A.H. After about an hour, Detective Maller stepped out of the room and took a ten-minute break. When he returned, Detective Maller offered Leonard an opportunity to use the restroom which Leonard declined. At the start of the second session, Detective Maller initiated the interview by stating that his goal was "to try and fix things" and to help A.H. and Leonard in whichever way he could. (State's Exh. 3 at 14:07). Detective Maller told Leonard that he wanted to make sense of all of A.H.'s

claims. Detective Maller then informed Leonard that A.H. had been able to provide "intricate details" describing the molestation, and he had "no reason to believe" that A.H. was lying. (State's Exh. 3 at 14:09). Again, Leonard denied all the allegations and reiterated that he could not remember doing anything to A.H. Referring to A.H.'s numerous allegations, Detective Maller told Leonard "[t]here is so much, you gotta remember something." (State's Exh. 3 at 14:24). Leonard immediately stated, "I don't remember doing anything with [A.H.] . . . obviously you got so much evidence against me that I am guilty regardless . . . what kind of help can I get?" (State's Exh. 3 at 14:24). In response, Detective Maller asked Leonard, "[Y]ou say you want help? What do you want help for?" (State's Exh. 3 at 14:28). Leonard explained that it was because he was "obviously. . . guilty" of molesting A.H. (State's Exh. 3 at 14:28). At that point, Detective Maller repeated, "[L]ike I said before, the first step to fixing a problem, is to admit in having a problem. Can you at least admit you have a problem?" (State's Exh. 3 at 14:27). Leonard stated that he had "never done anything" to A.H. and that he was not a "sexual beast" or a "monster." (State's Exh. 3 at 14:27). Detective Maller then questioned Leonard as to where he desired to be "at some point in time down the road." (State's Exh. 3 at 14:28). Leonard asserted that he wanted things to return to normal and that meant getting back to his family and work. Suggesting the need to tell the truth, Detective Maller informed Leonard that there was no "easy path" for Leonard to be reunited with his family and that it was up to Leonard to establish that path. (State's Exh. 3 at 14:28). Also, Detective Maller was clear that he was not in charge of the prosecution process, and he informed Leonard that he

would submit his findings to "other people. . . who would make the best educated decision to help" Leonard and his family. (State's Exh. 3 at 14:35). After a moment of silence, Leonard stated, "Yes, I have done shit." (State's Exh. 3 at 14:36). At that point, Leonard confessed. Leonard stated that when A.H. was about eleven or twelve years old, he had touched her vagina with his hands and lips. Leonard additionally described an instance where he stood behind A.H. and rubbed his penis on her bare buttocks. Leonard also admitted that he had masturbated in front of A.H. on at least two occasions.

[17] Here, we find that the record contains substantial evidence to support a conclusion that, based on the totality of the circumstances, Leonard voluntarily gave his statements. The interview itself ran for approximately three hours, during which Leonard had a bottle of water, and Detective Maller offered to allow Leonard to take a bathroom break at the one-hour mark. Detective Maller treated Leonard with respect, and he remained calm throughout the interview. During the first session, Detective Maller gathered background and preliminary information from Leonard, and he only gave Leonard a brief overview of A.H.'s claims with the hope that it would encourage Leonard to talk. Additionally, Detective Maller did not mislead or lie to Leonard about any of the facts at the interview. After Detective Maller indicated that he wanted to help Leonard and A.H., without offering any concrete promises of leniency in prosecution or sentencing, Leonard confessed to molesting A.H.

[18] We find that the inducements made by Detective Maller that he wanted to *help* Leonard reunite with his family, were more akin to the vague or indefinite

promises in which our courts have held do not render a confession involuntary. *See Williams v. State*, 997 N.E.2d 1154, 1161 (Ind. Ct. App. 2013) (holding that the police officers' statements that they wished to help defendant and his daughter were not implied promises of leniency). In the instant case, we find no evidence to conclude that Detective Maller engaged in tactics that were designed to overcome Leonard's free will in order to elicit a confession, and we conclude that the trial court properly admitted Leonard's statements under both the United States and Indiana Constitutions.

[19] In an alternative argument, Leonard posits he suffers from borderline intelligence, and Detective Maller overcame his free will which led him to confess. Specifically, Leonard alleges that his confession was involuntary because he "was a high-school drop-out who had failed several consecutive years of his English classes." (Appellant's Br. p. 11). First, Leonard fails to mention in his brief that while he had dropped out of high school, he obtained a GED in subsequent years. Furthermore, although Leonard testified he had trouble "comprehending things," at the time of the interview, Leonard spoke fluent English and he understood and waived his rights. (Tr. Vol. III, p. 24). More importantly, his behavior during the interview was rational and he was aware that Detective Maller was conducting a criminal investigation. Moreover, there is no allegation or indication that Detective Maller got the impression that Leonard had limited intellectual functioning. *See Miller v. State*, 770 N.E.2d 763, 767 (Ind. 2002) (holding that a defendant's confession was

voluntary where there was no allegation or indication that the police knew that the defendant was mentally delayed).

[20] In sum, looking at the totality of circumstances, we conclude that Leonard's confession was given voluntarily; therefore, the trial court did not abuse its discretion by admitting the videotaped interview at his trial.

## II. *Sufficiency of the Evidence*

[21] Leonard claims that the State presented insufficient evidence to support his conviction for one Count of child molesting, a Class A felony. When reviewing a claim of insufficient evidence, it is well established that our court does not reweigh evidence or assess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). Instead, we consider all of the evidence, and any reasonable inferences that may be drawn therefrom, in a light most favorable to the verdict. *Id*. We will uphold the conviction "'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id*. (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

[22] To convict Leonard of Class A felony child molesting as charged in Count II, the State was required to prove, in pertinent part, that a person at least twenty-one years of age performed sexual intercourse or deviate sexual conduct on a child who is under fourteen years of age. *See* I.C. § 35-42-4-3(a)(1) (2012). "Deviate sexual conduct means an act involving: (1) a sex organ of one (1)

person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." I.C. § 35-31.5-2-94 (2012). Count II related to Leonard's act of placing his "penis on [A.H.'s] anus" and attempting to "penetrate [A.H.]" (Appellant's App. Vol. II, p. 27).

[23] Although evidence of penetration of a child's anus by a defendant's penis will establish deviate sexual conduct, the State is not required to introduce evidence of penetration. *Wisneskey v. State*, 736 N.E.2d 763, 764 (Ind. Ct. App. 2000). Instead, the State is required to establish only that the defendant "committed a sex act with his penis involving the child's anus." *Id*. Our supreme court has noted that in child molestation cases a detailed anatomical description by the victim is unnecessary and undesirable. *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996). The court reasoned that many people are unable to precisely describe anatomical features, and further, that such a requirement would subject victims to unwarranted questioning and cross-examination. *Id*. Thus, despite a child's unfamiliarity with anatomical terms and his limited sexual vocabulary, a conviction for child molesting may rest solely upon the child's uncorroborated testimony. *Wisneskey*, 736 N.E.2d at 765.

[24] Leonard contends that the State only established that his penis touched A.H.'s buttocks and there was insufficient evidence to prove that he attempted to penetrate A.H.'s anus. In support of his contention, Leonard cites to *Downey v. State*, 726 N.E.2d 794, 797 (Ind. Ct. App. 2000), *trans. denied.* In *Downey*, the victim testified that Downey had rubbed his penis up and down between her "butt cheeks." *Id*. A police detective and child sexual abuse counselor testified

that Downey admitted that he had rubbed his penis between the child's "butt cheeks" and was "humping" her, but that he did not penetrate her. *Id*. Because there was no explicit evidence of contact with the anus, this court concluded that there was insufficient evidence to convict Downey of child molesting. *Id*.

[25] We find the instant facts inapposite from *Downey*. At Leonard's jury trial, A.H. testified that one night when Mother was sleeping in the other room, Leonard found her laying on the pullout couch. A.H. testified that Leonard curled behind her and groped her. A.H. added that Leonard ultimately "pulled his pants down" and "rubbed his" penis "against [her] bare rear end . . . and tried to . . . I guess you'd call it, anal penetration." (Tr. Vol. II, p. 95). A.H. stated that Leonard's actions "hurt." (Tr. Vol. II, p. 53).

[26] Based on A.H.'s testimony, there is explicit evidence that Leonard's penis made contact with A.H.'s anus. Moreover, A.H.'s testimony that she felt pain during the incident also supports an inference that Leonard was attempting anal penetration and not merely touching A.H.'s buttocks with his penis. As we held in *Wisneskey*, 736 N.E.2d at 765, the fact-finder can infer that pain is the result of contact between the defendant's penis and the anus. In this regard, we conclude that there was sufficient evidence to allow an inference beyond a reasonable doubt that Leonard committed Class A felony child molesting by causing his penis to make contact with A.H.'s anus.

# CONCLUSION

Based on the above, we conclude that the trial court did not abuse its discretion by admitting Leonard's statements pertaining to his confession. Further, we conclude that there was sufficient evidence to establish that Leonard committed child molesting as a Class A felony.

Affirmed.

Vaidik, C. J. and Kirsch, J. concur